JEWELL v. McINTYRE et al.

(Supreme Court, Appellate Division, Second Department. June 7, 1901.)

1. CORPORATIONS—CONSOLIDATION—CONTRACT.

J. (who was a holder of stocks and bonds in the H. Milling Co.) and M. entered into a contract reciting that the latter proposed the formation of a corporation to acquire and consolidate the H. Flour Mill and certain flour mills in certain cities, having a capacity of 90,000 barrels a day, and authorizing a committee, in case of such organization, to exchange the stock and bonds of J. for similar stock and bonds in the new corporation, share for share, on condition that only so many of the mills specified, or others, as should be considered advantageous by the organizers, should be acquired, and that the amount of stock and bonds in the new corporation should be subject to exchange in case of the acquisition of more or less of the property. Held, that the committee was authorized to make the exchange, though mills of the capacity of only 39,000 barrels a day were acquired, and though title to the H. Mill was not acquired, but only 95 per cent. of the stock therein and 40 per cent. of the bonds; the H. Co. being controlled by the directors elected by the new company, and bonds of the new company being secured by mortgage on all the property acquired by it, including the bonds and stock of the H. Co. so acquired.

2. SAME—RESCISSION.

Where the bonds of the new corporation have been placed on the market for sale, and some are in the possession of persons who in the ordi-

nary course of business would have no knowledge of the transaction, the offer of J. to return the bonds and stocks of the new corporation received in exchange for his old bonds and stocks is not a sufficient placing in statu quo to authorize a rescission, even if the committee exceeded its powers.

3. SAME—DELIVERY OF STOCK.
The actual delivery of the stock in the H. Co. by J. to the committee, with a power of transfer attached to the certificates, was a transfer of the legal title which would enable the committee to transfer the title thereto to a subsequent good-faith purchaser, free from equities existing in favor of the former holder.

4. SAME—EVIDENCE.
Where plaintiff, who transfers stock in an old corporation to a committee under a contract for the organization of a new corporation, seeks to rescind, evidence of the circumstances and facts under which the contract was signed and the stock transferred is admissible, as bearing on the question of good faith.
Jenks, J., dissenting.

Appeal from special term, Kings county.

Action by Ora M. Jewell against Thomas A. McIntyre and others to rescind a contract, and for the return of corporation stocks and bonds. From a judgment of the special term of the supreme court in favor of defendants (66 N. Y. Supp. 905), plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-BERG, JENKS, and SEWELL, JJ.

Jacob F. Miller, for appellant.

William J. Curtis (Francis D. Pollak, on the brief), for respondents United States Flour-Milling Co. and Hecker-Jones-Jewell Milling Co.

James McKeen, for respondents Franklin Trust Co. and others.

Arthur H. Van Brunt (Adrian H. Joline and Albert Rathbone, on the brief), for respondent Central Trust Co. of New York.

John M. Bowers, for respondent Nash.

Thomas S. Ormiston, for respondent McIntyre.

Albert G. McDonald, for respondent Moller.

WOODWARD, J. This case came originally before this court upon an appeal from an order of the special term continuing an injunction pendente lite; but before the matter had been fully passed upon, and during a recess of the court, it was tried at special term upon the merits (66 N. Y. Supp. 905), resulting in a dismissal of the complaint. From the judgment entered, appeal comes to this court, presenting substantially the same facts which were before us on the appeal from the order.

The action was brought to annul a contract, under the terms of which the plaintiff deposited bonds and stocks of the Hecker-Jones-Jewell Milling Company with certain of the defendants upon conditions which, it is alleged, have not been complied with, and to recover said bonds and stocks, or, in case of failure to recover such securities, then to recover their value. The litigation involves important interests, and, to a full understanding of the questions involved, it is necessary to set out the contract in full, which is as follows:

"It having been represented to the undersigned: That Thomas A. McIntyre and various other persons identified with the flour-milling interests in this country propose to organize a corporation, under the laws of a state of the United States, to have the following capitalization, to wit: Common stock, 125,000 shares, at $100 each, $12,500,000; preferred stock, 6 per cent., cumulative, 125,000 shares, at $100 each, $12,500,000; first mortgage 6 per cent. consolidated 40-year gold bonds, covering all the milling properties acquired, $15,000,000; such stock and bonds to be issued in acquiring properties and providing a working capital, and in paying legal and other expenses, including profit to' organizers, reserving such amount as may be deemed necessary for future use of the company. That it is proposed that such company shall acquire the principal flour mills situated in Minneapolis and Duluth, in the state of Minnesota; at Superior and West Superior cities and at Milwaukee, in the state of Wisconsin, of the Hecker-Jones-Jewell Milling Company, having an estimated aggregate capacity of 90,000 barrels per day, or so many of said mills or others as may be considered advantageous by the organizers. The amount of bonds and stock to be subject to change in case of acquisition of more or less of the properties, or for other reason, but always to be approved by the committee herein appointed, or a majority of them, representing the interests of the bondholders and stockholders of the Hecker-Jones-Jewell Milling Company. That, from the statements made by the various owners, it is estimated by the organizers that the yearly savings and economies to be made available by placing the said mills under one management and ownership will amount to a large sum, —at the very least, sufficient to pay a dividend of six per cent. on the entire common stock of the proposed company,—and that the present combined net earnings of the said mills which the organizers propose to acquire are in excess of the amount necessary to pay the interest on said bonds and the dividend of six per cent. on the preferred stock issued: Now, therefore, in order to facilitate and assist the said McIntyre and his associates in the organization of said corporation and the acquisition of said properties, the accomplishment of which the undersigned deem for their best interest, and as an inducement for such organizers to procure the objects aforesaid, and also in consideration of the sum of one dollar in hand paid to each of the undersigned by Thomas A. McIntyre, the receipt of which is hereby acknowledged, the subscribers hereto, holders of the stock and bonds of the Hecker-Jones-Jewell Milling Company, hereby promise and agree, each for himself and not for the others, to deposit with the Franklin Trust Company of New York, which is hereby designated as trustee hereunder for the organizers and the undersigned, the number of shares of the common stock and preferred stock and of the bonds of the said Hecker-Jones-Jewell Milling Company set opposite to their respective names, whenever notified by mail so to do by the said committee herein appointed to carry out the provisions of this agreement, and receive for such stock and bonds the receipts of said trust company, certifying that they are received and to be held and disposed of in accordance with the terms and spirit of this instrument; each certificate of stock so deposited to have attached a properly executed power of transfer. The said trust company and said committee are authorized, in case of said organization being carried into effect, to accept and exchange on behalf of the undersigned, for the stock and bonds deposited hereunder, share for share, of stock of the same class and bond for bond of like amount, of the securities of the new company, or for the negotiable receipts of a trust company which is to deliver said new stock and bonds should the same be delayed in execution. And the undersigned hereby constitute and appoint George H. Southard, William A. Nash, and C. Gerhard Moller, or a majority of them, a committee and attorneys, with full power to act for the undersigned, and in their stead, as their true and lawful attorneys, to carry out the purposes and provisions of this agreement, and to consent and assist in the sale of the property and business of said Hecker-Jones-Jewell Milling Company to the said proposed company as herein contemplated, and to consent and vote for the dissolution of the said Hecker-Jones-Jewell Milling Company, if it is deemed necessary; and the undersigned further agree to deposit with such stock powers of attorney and proxies which shall be suffi-

cient and in form to authorize the said committee and attorneys to vote such stock at any meetings which may be called to authorize and carry out the said organization, acquisition of properties, and generally fulfilling the terms of this agreement. It is further understood and agreed that in case the proposed corporation shall not be organized, and its bonds and stock, or a trust company's negotiable receipts therefor, shall not be ready for exchange in place of those deposited hereunder by the first day of February, 1899, then the stocks and bonds deposited hereunder shall be returned to the owners thereof; also that the receipts of the Franklin Trust Company, duly indorsed by the party in whose name the same are issued, shall be conclusive evidence of the title of the holder thereof to either the new securities or those deposited hereunder; also that the undersigned shall be put to no expense whatever by reason of their signature hereto, the exchange of said securities, or the services rendered by the said trust company or the committee and attorneys aforesaid."

The plaintiff alleges that the defendant the United States Flour-Milling Company was organized as a company which was to include the various mills and companies specified in the agreement, and which was to include the defendant the Hecker-Jones-Jewell Milling Company; that "the plaintiff, further complaining, shows and states that believing that the defendants Thomas A. McIntyre, George H. Southard, William A. Nash, and C. Gerhard Moller would in good faith carry out the said scheme, she on or about the 26th day of April, 1899, delivered to the defendant the Franklin Trust Company, which was the trustee appointed to receive the same, three hundred and forty (340) shares of the preferred stock, two hundred and fifty (250) shares of the common stock, and twenty-two (22) first mortgage bonds of the defendant the Hecker-Jones-Jewell Milling Company, and received from said Franklin Trust Company three receipts," copies of which are set out in full in the complaint; that she subsequently exchanged the receipts of the Franklin Trust Company, receiving a corresponding number of shares of the preferred stock and bonds of the United States Flour-Milling Company; that "the said consolidation has not been effected, and she alleges that the defendant the United States Flour-Milling Company has not been able to, and is not now able to, carry out the said plan of consolidation, and has ceased to do anything in relation thereto, and that neither the said Hecker-Jones-Jewell Milling Company, nor the stock and bonds thereof, has been transferred, and will not be transferred, to the United States Flour-Milling Company, and the plan of consolidation has wholly failed, and the time to effect same has long since passed, and that she has chosen to annul the said arrangement, and she claims and insists that she has become and is now entitled to have her stock and bonds of the said Hecker-Jones-Jewell Milling Company returned to her"; that she has tendered the stocks, bonds, and receipts to the said Franklin Trust Company and to the defendant the Central Trust Company, and has demanded the return of her original stocks and bonds, which has been refused; that the said Thomas A. McIntyre, George H. Southard, William A. Nash, and C. Gerhard Moller are endeavoring to organize another company, and propose to transfer to the said new company the stocks and bonds and property of the Hecker-Jones-Jewell Milling Company, and make an entirely new scheme, without the consent and co-operation of this plaintiff, and to which she does

not consent, and she fears that the Franklin Trust Company and the Central Trust Company will transfer her said stocks and bonds to some other person or company, to her injury; and that she has not an adequate remedy at law. On the other hand, the defendants show that the United States Flour-Milling Company was duly organized under the laws of the state of New Jersey, with authority to acquire possession of the several properties, or to purchase the stocks and securities of other corporations, and that it has actually acquired the fee to a large number of properties situated at the points mentioned in the agreement, the properties so acquired having a daily producing capacity of about 40,000 barrels of flour; that it has acquired by purchase substantially all of the stock of the defendant the Hecker-Jones-Jewell Milling Company, together with nearly one-half of the outstanding bonds; that the mills of the latter company are being operated by the said United States Flour-Milling Company; and that the entire scheme of consolidation has been carried out in good faith in the spirit of the agreement. It is urged, however, by the plaintiff that the plan of consolidation contemplated the purchase of certain mills with an aggregate capacity of 90,000 barrels of flour, and that a failure to secure all of the properties necessary to accomplish this end is a failure to carry out the plan. The agreement does not, however, require that all of these properties shall be secured. The provision of the agreement is "that it is proposed that such company shall acquire the principal flour mills situated in Minneapolis and Duluth, in the state of Minnesota; at Superior and West Superior cities, and at Milwaukee, in the state of Wisconsin, of the Hecker-Jones-Jewell Milling Company, having an estimated aggregate capacity of 90,000 barrels per day, or so many of said mills or others as may be considered advantageous by the organizers." It was for the organizers, acting in good faith, to determine what mills could be advantageously included in the combination, and this involved considerations of price, locality, capacity, etc.; and, in the absence of some evidence of an abuse of the discretionary powers vested in the organizers, the plaintiff has no cause for complaint because the number of mills included is less than the number necessary to produce an aggregate of 90,000 barrels of flour per day. The contract, it will be remembered, provided that the amount of bonds and stock should "be subject to change in case of acquisition of more or less of the properties, or for other reason," thus showing conclusively that the contract did not of necessity require the purchase of all the properties indicated, and the record shows that no more of the stock and bonds of the United States Flour-Milling Company have been issued than enough to acquire the proportion of production which has been secured.

The objection that the United States Flour-Milling Company has not acquired the property of the Hecker-Jones-Jewell Milling Company is hardly of a tangible nature, as showing a ground for the interposition of equity to relieve the plaintiff from the obligations of her contract. The record on the former appeal, now supported by the evidence, shows that:

"The said United States Flour-Milling Company on the 1st day of May, 1899, duly acquired by purchase 23,784 shares out of a total issue of 30,000

shares of the preferred stock of the Hecker-Jones-Jewell Milling Company, and 18,736 shares out of a total issue of 20,000 shares of the common stock of said company, and 884 of the bonds of said company out of a total issue of 2,500 bonds, and that said United States Flour-Milling Company has since the 1st day of May, 1899, acquired additional stock and bonds of said Hecker-Jones-Jewell Milling Company, so that it now owns 29,095 of the shares of the preferred stock, 19,852 shares of the common stock, and 1,004 of the bonds of said company, and is practically and substantially the owner of said company and of all its property."

The Hecker-Jones-Jewell Milling Company, like the United States Flour-Milling Company, is a New Jersey corporation; and, the latter being authorized by the laws of that state to purchase the stock and securities of other corporations, the plaintiff can hardly be heard to complain that there has been a failure of the contract because there has not been a transfer of the fee of the property of the Hecker-Jones-Jewell Milling Company. It is, to all intents and purposes, the property of the absorbing company.

The plaintiff admits that she deposited her stock and bonds with the Franklin Trust Company in pursuance of the agreement, with a proper power of attorney; that she received subsequently the stock of the United States Flour-Milling Company, share for share and bond for bond, in accordance with the agreement. The United States Flour-Milling Company deposited the stock and bonds with the Central Trust Company as a trustee for a mortgage to secure the bonds of the United States Flour-Milling Company, and those bonds have been placed upon the market; some of them now being in the hands of persons who in the ordinary course of events would have no notice of any of the transactions preceding the deposit of the securities and the issuing of the bonds. The plaintiff, by a mere tender of her stock and bonds to the defendants, has not placed them in the same condition that the parties were in at the time the contract was made. The Central Trust Company, as the trustee, has obligations outstanding in which the rights of third parties are involved, and a court of equity will be very careful how it disturbs the rights of innocent purchasers of the bonds of the United States Flour Milling Company. Effective rescission requires a lawful right to rescind, due notice of an intention to rescind, and the restoration of benefits received by the party attempting to rescind, so that the other party may be placed in statu quo. Cox v. Stokes, 156 N. Y. 491, 506, 51 N. E. 316. The plaintiff, by placing her stock in the hands of the committee and attorneys, with "full power to act for the undersigned and in their stead, as their true and lawful attorneys, to carry out the purposes and provisions of this agreement, and to consent and assist in the sale of the property and business of said Hecker-Jones-Jewell Milling Company to the said proposed company as herein contemplated, and to consent and vote for the dissolution of the said Hecker-Jones-Jewell Milling Company, if it is deemed necessary," and in actually delivering the stock and bonds of the company, with a power of transfer attached to each certificate of stock, parted with the legal title to such stock and bonds. Such a delivery transfers the legal title to the shares, as between the parties to the transfer, and not a mere equitable right. Knox v. American Co., 148 N. Y. 441, 454, 42 N. E. 988,

31 L. R. A. 779, 51 Am. St. Rep. 700, and authorities cited. The trans-feree in good faith and for value holds his title free from latent equi-ties between prior parties in the line of transmission. Same author-ity. The Franklin Trust Company, one of the defendants, was a mere trustee to carry on the transfer. It accepted the plaintiff's stock and bonds, and gave receipts for the same. Subsequently it de-livered such of the stock and bonds as the plaintiff desired of the United States Flour-Milling Company, and here its connection with the transaction ended. The United States Flour-Milling Company was authorized by the laws of the state of its creation to issue its stock and bonds in exchange for the stock and bonds of other corpo-rations; and it does not appear that the stock of the principal com-pany is not of value, or that the transaction by which the United States Company became the owner of the plaintiff's stock and bonds was not in good faith. We are of opinion, therefore, that the United States Company is the legal owner of the stock and bonds of the plain-tiff, and that having put such stock and bonds into the hands of a trustee for the security of the bonds which were given to the plain-tiff in exchange for her holdings in the Hecker-Jones-Jewell Milling Company, as well as to others, upon other and presumably sufficient considerations, we are persuaded that the plaintiff has failed to make out a case entitling her to the final relief demanded.

We have examined the questions raised by the exceptions, but do not find reversible error. The transaction was necessarily based up-on estimates, and some of the papers were entirely informal, as was to be expected in a negotiation of this character. It was necessary to determine the question of good faith, the lack of which alone could justify a court of equity in interfering to relieve the plaintiff of the contract into which she had entered; and to this end evidence of exactly what was done, under what circumstances and upon what basis of fact such action was predicated, was competent. The plain-tiff has failed to show that the defendants have not acted in good faith and within the letter and spirit of the contract, and, as the bur-den of establishing a right to relief was upon her, there is abundant justification for the judgment which has been entered.

The judgment appealed from should be affirmed, with costs. All concur, except JENKS, J., who dissents.