EMILIE SCHEIBE, Respondent, v. HENRY C. ZARO, Appellant.

First Department, February 10, 1922.

**Contracts — rescission — party can rescind only where both parties can be placed in statu quo — banks and banking — principal and agent — action to recover money deposited with defendant to remit to Germany — failure of agent to observe duty of active diligence — plaintiff not entitled to recover full amount deposited but only damages resulting from defendant's failure.**

It is only when the parties to an agreement can be placed in *statu quo* that one may rescind the entire contract for the failure of the other to perform it.

Accordingly, where the plaintiff on January 15, 1917, paid the defendant $3,630, the equivalent on that day of 20,000 marks, " for remittance to " a specified bank in Berlin, and within the five days allowed by the Banking Law, section 167, the defendant partially performed his duty by transferring 50,000 marks, which included the plaintiff's 20,000 marks, from the Chase National Bank to the Dresdner Bank, and defendant claimed that on January twenty-fifth he made the remittance due the plaintiff by a letter to the specified bank inclosing a draft on the Dresdner Bank with signatures of the plaintiff, etc., but the defendant failed to follow up this letter and ascertain whether it had been received and did not know of its non-arrival until March, 1920, when the plaintiff demanded the return of the sum deposited, and it appeared that on March 26, 1917, the defendant had a balance of only 17,000 marks in the Dresdner Bank, but there is no suggestion of fraud and 20,000 marks were tendered by the defendant at once upon discovering that the letter with the draft inclosed had not reached its destination, a direction of a verdict in favor of the plaintiff for the amount paid defendant was erroneous, as the basis for granting such relief is rescission and restitution and the defendant could not be placed in *statu quo* so there could be no rescission.

Evidence offered by the defendant that on January twenty-seventh the first ship sailed which could have carried mail to Germany after the date of the plaintiff's deposit was improperly excluded.

*It seems,* that the failure of the defendant to remit to the specified bank within the required five days occasioned only nominal damages to the plaintiff; however, the defendant, as agent of the plaintiff, owed her a duty to use reasonable diligence to ascertain and report the non-arrival of the draft at the specified bank, and for his failure in this respect the plaintiff is entitled to the value of 20,000 marks on the date upon which a jury shall find that the defendant should, in the exercise of reasonable diligence, have notified the plaintiff of the non-arrival of the draft,

PAGE and DOWLING, JJ., dissent, with memorandum.

APPEAL by the defendant, Henry C. Zaro, from a judgment of the Supreme Court in favor of the plaintiff, entered in the

office of the clerk of the county of New York on the 6th day of May, 1921, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 2d day of May, 1921, denying defendant's motion for a new trial made upon the minutes.

*Phillips, Mahoney & Leibell* [*Valentine Taylor* of counsel], for the appellant.

*Joseph S. Rosalsky* [*Jacob I. Berman* of counsel], for the respondent.

SMITH, J.:

The plaintiff on January 15, 1917, paid the defendant $3,630, the equivalent on that day of 20,000 marks " for remittance to " a specified savings bank in Berlin. Nothing extra was paid to defray the expense of cable transmission. Such deposit necessitated the forwarding of signatures of plaintiff, request for bank book, etc. The duty of defendant as specified in the Banking Law of this State, section 167, was that this remittance should be made within five days, unless a written agreement to the contrary had been entered into.* This duty was not fully performed. The defendant did, however, offer uncontroverted evidence that it had partially performed within the five days, *i. e.*, by the purchase and transfer of 50,000 marks from the Chase National Bank to the Dresdner Bank, the defendant's regular correspondent, on January nineteenth. This 50,000 marks included the 20,000 marks credit for the plaintiff. Later, moreover, on January twenty-fifth, defendant claimed to have made the remittance due plaintiff by a letter to this specified savings bank inclosing draft on Dresdner Bank, specimen signatures, etc. A copy of this letter was offered in evidence. The defendant further offered evidence, wrongly excluded, that on January twenty-seventh the first ship sailed which could at that time have carried mail to Germany after date of plaintiff's deposit. The defendant apparently failed to follow up this letter and ascertain whether it had been received. The plaintiff's demand for the return of the sum deposited, which was made in March, 1920, accompanied by a letter from the Berlin savings bank stating that the defendant's instructions

---

* Since amd. by Laws of 1921, chap. 351.— [REP.

of January twenty-fifth had never been received, was, it was claimed, the defendant's first information of its non-arrival. The further facts appear that on March 26, 1917, two months and one day after the mailing of the draft in New York, the defendant's testimony shows that its balance in the Dresdner Bank was only 17,000 and some odd marks, not enough to cover this draft. There is no allegation or suggestion of bad faith or fraud. The defendant, up to and including the mailing of the draft, has apparently done everything which could be done to fulfill his contract. The trial justice, relying on section 167 of the Banking Law providing for transmission within five days, directed a verdict for the amount deposited, together with interest and costs.

The authorities have apparently developed along the line indicated in the appellant's brief, namely, that " there is a marked distinction " between cases involving facts amounting to a " purchase of credit " and cases involving facts showing a duty to transmit moneys to some specified person or bank. The recovery for breach of the banker's duty in some cases of the former type has been said to be the return of the sum deposited. (*Atlantic Communication Co.* v. *Zimmermann*, 182 App. Div. 862.) The recovery for breach of the banker's duty in some cases of the latter type has been held to be damages merely for breach of the contract. (*Fliker* v. *State Bank*, 94 Misc. Rep. 609.) If this classification be assumed to control all cases and govern recoveries as indicated above, it is for the purposes of our present case of no value. The real issue in each case is not whether the facts involved a purchase of credit or a transmission of money, but rather the question *is the plaintiff in each case entitled to a rescission of his contract and the return of his money on a quasi contractual theory or merely to his old common-law remedy of damages for breach of his contract.*

The true basis for allowing the plaintiff to recover the sum deposited is now recognized as being rescission and restitution and not any trust relationship. CRANE, J., in *Legniti* v. *Mechanics & Metals Nat. Bank* (230 N. Y. 415, at 420) writes: " The customer may rescind the contract and sue to get back his money or else sue for breach of contract." In that case its contract had been in no part performed.

Under what circumstances then does the law allow rescission of a contract when, as in the case at bar, there has been a partial performance? Mr. Williston in his text book on Contracts (Vol. 3, § 1457) says: " If a party to a contract has paid money and the other party has wholly failed to perform on his part, restitution may be had both in England and in the United States, and as will be seen from the cases cited below and from the following sections in the United States at least the failure need not be total, if it is substantial *and the status quo can be restored.*"

In Corpus Juris (Vol. 13, § 678) it is said: " A rescission of a contract demands as a general rule the restoration of the *status quo* of the parties." In a further paragraph on rescission in case of failure to perform it is said: " A contract cannot be rescinded because of the failure of one of the parties to perform where *both parties* cannot be restored to *status quo.*"

*DeMontague* v. *Bacharach* (181 Mass. 256, 260) holds: " It is settled that a plaintiff cannot rescind a contract on the defendant committing a breach of it without putting the defendant in *statu quo.*"

In *Matter of Morgantown Tin Plate Co.* (184 Fed. Rep. 109, 112) Mr. Justice DAYTON says: " It is also well settled that when a contract has been partially executed and one of the parties has derived substantial benefits or has imposed upon the other *material losses through the latter's partial performance of the agreement, then the first party cannot rescind* the contract on account of the failure of the second party to complete his performance, but the agreement must stand, the first party must perform his part of it and his only remedy for failure of the second party to completely perform is compensation in damages for the breach. [*Howe* v. *Howe & Owen Ball Bearing Co.*, 154 Fed. 820–826; *Kauffman* v. *Raeder*, 108 Fed. 171–179; 54 L. R. A. 247.] It is only when the *parties* to the agreement can be placed in *statu quo* that one may rescind or repudiate the entire contract for the failure of the other to perform it. *Kauffman* v. *Raeder*, 108 Fed. 171–179, where more than twenty cases from the U. S. Supreme Court, the Circuit Court of Appeals, and State Courts of last resort are cited to support these principles. [See also *Lake Shore & M. S. Ry. Co.* v. *Richards*, 152 Ill. 59; 30 L. R. A. 33, and the elaborate

note appended, wherein the whole subject is exhaustively considered.]"

Again in *Blake* v. *Pine Mountain Iron & Coal Co.* (76 Fed. Rep. 624) the court holds (at p. 639): " Nor does the fact that a party had not performed his contract even according to its legal effect necessarily entitle the other party to rescission, if either or both have partly performed and *circumstances of embarrassment have thereby arisen which make it impracticable to restore the status quo.*"

For cases in New York following this general theory see *Cox* v. *Stokes* (156 N. Y. 491, 506) and *Jewell* v. *McIntyre* (62 App. Div. 403).

The facts in the case before us from the stipulation and the uncontroverted evidence of the defendant fall squarely within these authorities. There has been a partial performance in the purchase of marks within the five days. The situation is not presented where the defendant has done nothing within the statutory period and his partial performance occurs later. The rescission and restitution to the plaintiff would not leave the defendant in *statu quo*. This, moreover, is not a case involving fraud and hence is not within the exception of *Kley* v. *Healy* (127 N. Y. 555, 561). This is not a case of trust. The defendant is at most an agent. The plaintiff it follows, therefore, in the case at bar was not entitled to the recovery of the sum deposited.

It remains to consider what relief the plaintiff is entitled to. The defendant agreed to remit to the specified savings bank the market equivalent of the sum received impliedly within the five days prescribed by the Banking Law, section 167. This duty was not fulfilled, and for any such breach the plaintiff is entitled to damages. It does not appear, however, from the facts that this breach occasioned any but nominal damages. Damages for breach are measurable by the value of performance. In Williston on Contracts (Vol. 3, § 1339) the text reads: " It is, therefore, performance that the injured party was then entitled to, and is not the contract of which he has been wrongly deprived by the breach, but the performance of the contract. The law in giving him a right of action for damages, therefore, should adjust the damages in such a way as to equal the value of the performance." In section

1343 the text reads: " As the plaintiff is the injured party, the fundamental inquiry is the value to him of the performance of the contract." In section 1338 the text reads: " For the injury caused by the non-performance of most contracts the primary if not the only remedy of the injured party is an action for damages for the breach. In fixing the amount of these damages, the general purpose of the law is, and should be, to give compensation:— that is, to put the plaintiff in as good a position as he would have been in had the defendant kept his contract." Again, in the same section: " It also seems to have been the theory upon which recovery was allowed in the early law in assumpsit that the damages were based on the consideration given rather than on the value of the defendant's performance. Such a rule was natural when assumpsit was regarded as in the nature of a tort, and when therefore it might well seem that the law should put the plaintiff in as good a position as he was in before the contract was entered into rather than in as good a position as he would have been in had the contract been carried out." And this rule seems to be applied to either a partial or a total breach. (Williston Cont. § 1290.) Here the defendant's performance within the five days would have been no more valuable than the performance he rendered, for the letter would not have left New York any earlier than by the ship sailing on the twenty-seventh for which the actual letter mailed was addressed on the twenty-fifth.

There was a further duty on the part of the defendant, however. He was the agent of the plaintiff and reasonable diligence was necessary in promoting the plaintiff's business. His lack of effort in the plaintiff's behalf after mailing the letter on the twenty-fifth of January seems to me a breach of this reasonable diligence. In *Katcher* v. *American Express Co.* (94 N. J. Law, 165; 109 Atl. Rep. 741) defendant agreed, in consideration of money paid by plaintiff, to cable a credit of 1,000 rubles to Russia and remit, or forward, that sum to a designated person at a specified place, " subject to the rules and regulations of the various post-offices used in making the remittance." It was there held: " That there was no absolute agreement to deliver the money, and that when it had been duly mailed in Russia and had come back to defendant's agent undelivered,

plaintiff was entitled to no more than the 1,000 rubles, or their American equivalent at the current rate of exchange as of a time when with due diligence defendant should have ascertained and reported non-delivery." The opinion makes a clear distinction between an agreement to deliver and an agreement to remit. In the opinion it is stated: " But in view of the importance of the case as typical of a great number of similar transactions, we are not disposed to rest our decision on a mere question of pleading. The fundamental issue is as to the duty of the defendant under its contract. Plaintiff claims that defendant agreed to deliver the money, dollars or rubles, to Tese Kaczier at the place named. We are unable to read any such agreement from the written contract even as supplemented by parol evidence. It used the word ' remittance ' twice, and the word ' forward ' (as a verb) once. Without doubt, the two words are used synonymously. As we have said, the word ' deliver ' is not used at all. The definitions of the word ' remit ' in standard authorities do not involve the idea of delivery. ' Remit (2). To transmit or send, as money, bills, or other things in payment for goods received,' (quoting from Goldsmith). ' I have received that money which was remitted here in order to release me from captivity ' (Century Dictionary). ' To transmit or send, especially to a distance, as money in payment of a demand, account, draft, etc.' (New International Dictionary). See, also, 24 Encycl. L. (2d ed.) 461, and *Comber* v. *Leyland,* 1898 A. C. 524. So the word ' forward ' is defined in both these authorities as ' to send forward; to send toward the place of destination; to transmit.' See *Buell* v. *Chapin,* 99 Mass. 594."

In further discussion the opinion reads: " It is plain that under the circumstances of the case plaintiff is entitled to recover in some action the value of 1,000 rubles remaining undelivered in defendant's hands as of the time when, in the usual course and with reasonable diligence, defendant should have ascertained and notified plaintiff that delivery had failed and was impracticable by the course of the mail. When that time arrived is not shown in the case. It may have been March 4th, 1918, when the auditor wrote the agent at Newark, or it may have been earlier."

First Department, February, 1922.            [Vol. 199

It will be noticed in the case at bar that the contract as expressed in the receipt is a contract " for remittance," and not " for delivery," and while the question in the case cited arose in a different way from that presented in the case at bar, the reasoning of the case is direct authority in holding a primary duty to mail and a secondary duty to use reasonable diligence to ascertain whether the marks had been received at the point to which remittance was to be made. Just what steps he should have taken to ascertain whether the letter reached its destination; just what was a reasonable time to allow him under the conditions prevailing at that date to take these steps, these are questions of fact for the jury to determine. He was under such duty to use reasonable diligence to ascertain and report the non-arrival of the draft at the designated savings bank and if he had performed this duty the plaintiff could thereupon have realized the then value of her 20,000 marks and been saved the damage of subsequent deterioration. This breach, if found, therefore, has clearly resulted in a real damage.

The reasonable time at which this duty to notify the plaintiff occurred is, as I have said, purely a question of fact for the jury. If they should decide that under the peculiar circumstances then existing such time had not arrived before March 26, 1917, the further question would present itself, whether the fact that the defendant had not on that day enough to cover the draft mailed to the bank designated by plaintiff was a breach of obligation for which the plaintiff may now recover anything but nominal damages. If damages for a breach of contract are to be measured by the value to plaintiff of performance it is difficult to see how this breach has caused more than nominal damages. No draft was presented or dishonored. The 20,000 marks were tendered at once upon discovery that the letter with draft inclosed had not reached its destination. The logical rule of damages as I view it as applicable to this case, therefore, is the amount of damage actually suffered by the plaintiff for the breach of defendant's contract, which contract carries with it the implied or secondary obligation to ascertain within a reasonable time under all the circumstances of the case whether or not the letter and draft had reached the savings bank in Berlin.

The value of the 20,000 marks at that time should, I think, measure the plaintiff's recovery.

The judgment and order should, therefore, be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., and GREENBAUM, J., concur; DOWLING and PAGE, JJ., dissent.

PAGE, J. (dissenting):

I dissent. The transfer of the marks to the credit of the defendant in the Dresdner Bank did not perform the agreement to transfer the marks to the Berlin savings bank; therefore, the plaintiff was entitled to recover back the money she paid to defendant. I, therefore, am of opinion that the judgment and order should be affirmed.

DOWLING, J., concurs.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.