MICHAEL TEMMER, Respondent, *v.* LEOPOLD ZIMMERMANN and Others, Doing Business under the Firm Name and Style of ZIMMERMANN & FORSHAY, Appellants.

*Banks and banking — principal and agent — contract to transmit moneys to foreign country — action to recover deposit — damages — reasonable diligence — war conditions — evidence.*

Appeal by the defendants from a judgment of the Supreme Court, entered in the New York county clerk's office January 13, 1922, upon the verdict of a jury,

and also from an order entered January 10, 1922, denying the defendants' motion for a new trial.

Judgment and order affirmed, with costs. No opinion. Present — Clarke, P. J., Laughlin, Dowling, Smith and Greenbaum, JJ.; Smith, J., dissenting.

SMITH, J. (dissenting): Upon the 13th day of December, 1916, the plaintiff gave to the defendants the sum of $2,300 for the purchase of 20,000 kronen. At the time of delivery the defendants gave to the plaintiff a receipt in form as follows:

" " Memorandum

" ZIMMERMANN & FORSHAY

" Members of New York Stock Exchange

" 9–11 Wall St.

" Payable Through

" Wiener Bank Verein

" Vienna

" No. 1616 NEW YORK, *Dec.* 13, 1916.

" Mr. MICHAEL TEMMER,

" 135 West 117 St.

" In accordance with your request we will instruct our correspondents to remit to:

" Ungarische Postsparkasse

" at Budapest for acct Mrs. Jacob Temmer

"(Book 4,105,100—

" Kr. 20,000—@11½ $2300—

" It is important that you write to the payee to immediately acknowledge receipt of the money.

" Delivery guaranteed

" ZIMMERMANN & FORSHAY,

" By P "

The defendants through war conditions were unable to make delivery to the bank in Hungary until the 19th day of December, 1919. In 1920 the plaintiff ascertained the delivery had not been made until the 19th of December, 1919, and demanded the return of the $2,300. The evidence shows that at the time these kronen were purchased in 1916, and at the time that the plaintiff made deposit of the consideration therefor, the kronen were worth $2,300, the sum paid therefor. The evidence further shows that upon the 19th day of December, 1919, when the deposit was actually made, the kronen were worth only $160. The court charged the jury that if the defendants exercised reasonable diligence in making the deposit they were not liable; that if they failed to exercise reasonable diligence they were liable for the full amount of the money paid by the plaintiff at the time of the purchase. In 1920 the plaintiff tendered to the defendants $160, which the defendants refused to accept. This tender has not been kept good, and these kronen are now presumably in the bank at Budapest in the name of the mother of the plaintiff, for whom the kronen were purchased. There is evidence from which it may be held that the mother had used the kronen thus deposited, although the appellants in their brief seem to admit that the kronen thus deposited are still on deposit in the bank at Budapest to the order of the

plaintiff's mother. As I view this case, this fact is immaterial in the determination of the questions here involved and the apparent discrepancy need not, therefore, be considered. The plaintiff has recovered the full amount of the consideration paid for the kronen and his mother, also, has in her possession the kronen afterwards deposited. It is difficult to see if this judgment is paid, how the defendants could recover back those moneys, and, to the extent of $160, therefore, with interest from the date of the deposit, it would seem that this judgment must in any event be reduced. In the first place, it will be noticed that this contract was primarily a contract to remit these moneys to this bank. The contract has in it the words " delivery guaranteed." If there be any difference in legal effect between an agreement to remit and an agreement to deliver, the insertion of these words would make the contract a contract to deliver. The delivery, however, was not guaranteed to be made at any particular time. In a contract to deliver, the defendants' duty, in the absence of more specific words as to the time of delivery, would be to deliver within a reasonable time, and for failure to deliver within a reasonable time the plaintiff would be entitled to recover the value of the kronen as of such time. Under the authorities cited in *Scheibe* v. *Zaro* (199 App. Div. 807) the law seems to be well settled that in an action for a breach of contract the damage suffered is to be based upon the value of performance at the time when the law requires it to be performed. This rule rests, not only upon authority, but upon sound reasoning. If a party pays money for the delivery of kronen in a foreign country six months from the date of the contract and the money is not delivered, the party would be entitled to recover simply the value of those kronen as of the stipulated time of delivery. If the kronen had risen in value, the defendants would have suffered by the contract. If the kronen had depreciated before the time of delivery, the party making the contract with the transmitting bank would have suffered. The evidence in this case is very unsatisfactory as to what would be a reasonable time for delivery. There was evidence of one expert to the effect that at the time moneys could have been transferred within three or four weeks. Upon cross-examination of the witness, however, it would seem that he was speaking of the transfer by a special messenger, and that that was not the usual method of transmission. The evidence of the defendants is positively to the effect that the usual custom was to make remittance by mail. The evidence of the witnesses on both sides is to the effect that delivery of these remittances was very uncertain, and the evidence of one banker of his custom to send special messengers over, indicates that the deliveries by mail were not dependable. The defendants' witness swears that he urged upon the plaintiff the making of a cable transfer, but this would be more expensive, and that the plaintiff was told of the uncertainties of an attempted mail transmission. This evidence was not disputed by plaintiff. Assuming for the argument, however, that there was some evidence upon which the jury could find what was a reasonable time for the making of this transfer, under the charge of the court, the jury has only found that three years which transpired before the delivery was actually made was not a reasonable time, and, without a finding as to what was a reasonable time to make the transfer and as to what the kronen were worth at that time, as to which there is no evidence, there is no basis upon which the court was authorized to permit judgment to be entered against the defendants for damages. It is true that the contract price is some evidence of the value of the kronen at the

time that they were purchased. With the varying rate of exchange, varying weekly and daily, there is no presumption of continuance of the same value until the end of a reasonable period within which the defendants have to make delivery. In my judgment, therefore, the plaintiff can only recover in this case by showing what would be under the circumstances a reasonable time to make that delivery and the value of the kronen at such time, and that sum should be diminished by the value of the kronen which were in fact delivered as of the time of delivery. The complaint in this action seems to authorize a recovery for restitution upon a rescinded contract, or for damages for a breach of the contract. The trial court submitted to the jury only the question whether delivery was made within a reasonable time, charging them that if the kronen were not delivered within a reasonable time, the plaintiff was entitled to recover the full amount of his payment, to wit, the sum of $2,300. Within the rules which I have stated above this was not the proper measure of damage. It is claimed, however, that this result can be sustained under the doctrine of rescission and the recovery of restitution for the moneys paid thereupon. Authorities are cited in our decision in the *Scheibe Case (supra)* which seem to establish the rule that a party to a contract can only rescind where the other party can be put *in statu quo*. Further authorities may be found in the note in *Lake Shore & M. S. R. Co.* v. *Richards* (30 L. R. A. 44). This rule, also, rests upon reasonable ground, as emphasized in the case at bar. There is no claim of fraud on the part of the defendants, and there is very little, if any, evidence of unreasonable delay on their part or negligence in failing to make this deposit under the conditions existing at that time. While this country was not itself at war with Austria, of which Hungary was then a part, a great war was then pending between Austria and Germany and many other nations. This fact, of necessity, created abnormal and chaotic conditions in the business world, which caused the failure in the attempted transmission of funds in many thousands of cases from America to the countries then at war. A number of those cases we have already had under consideration in this court. These conditions were generally as well known to the plaintiff as to these defendants. The plaintiff was employed in the foreign exchange department of the Transatlantic Trust Company. There was no guaranty by the defendants of a delivery of these moneys at any specific time. Such a guaranty, it is clear, the defendants would not have made. There is no evidence of negligence of the defendants in endeavoring to transmit these moneys other than may be implied from the long delay before the kronen were in fact deposited, and this delay to my mind has little significance in view of conditions then existing. The only ground upon which the right to rescind can be claimed is delay in making the delivery. The delivery was in fact made. The rule governing the right to rescind the contract on the ground of delay in performance by the other party is stated in 6 Ruling Case Law (p. 928) as follows: " 312. Delay in Performance as Ground for Rescission.— In accordance with the rule that the breach of an independent covenant which does not go to the whole consideration of the contract, and is subordinate and incidental to its main purpose, does not entitle the injured party to rescind, the courts agree in holding that, where time is not expressly or by implication of the essence of the contract, the failure or inability of one party to perform within the time designated gives the other no right to rescind or abandon the contract, since such a breach does not defeat the object

of the parties. Where performance upon a precise date is not vital and may be compensated in damages, mere delay, in the absence of fraud or the like, will not justify the other party in abandoning the contract. And, for the same reason, where it is made plain in advance that one party will not be able to perform upon the precise date stipulated (time not being made essential), the other party may not repudiate his obligation in advance. It has been decided that one seeking to rescind a mutual contract of which time is not of the essence, on the ground of delay by the other party in complying with its terms, must show either such wilful and intentional delay as will evince the intention of the party delaying to treat the contract as at an end, or that the delay has caused such damages as will render a decree of specific performance inequitable and unjust." There is nothing here to show that time was of the essence of this contract. A guaranty of delivery was demanded and given, but not of delivery at any special time. The plaintiff himself swears that the deposit was for his own benefit. The natural inference is that this was a mere speculation in the fluctuations of exchange in the expectation on the part of the plaintiff that the kronen would rise in value. Either the plaintiff or the defendants must suffer this loss. The doctrine of rescission is an equitable doctrine and the reason therefor must impress the court with the equity of the plaintiff's claim. It seems clear that under the facts here presented no court of equity would decree a rescission of this contract as against an innocent defendant who must suffer the loss occasioned without any wrong or intentional neglect on its part, if the right of rescission be here declared. Where the parties cannot be put *in statu quo*, as shown by the decisions cited, and the defendants have been guilty of no wrongdoing, the plaintiff should be left to his remedy for damages which can be recovered under principles well settled in the law of contracts. In 8 Ruling Case Law (at p. 454) the text in part reads: " The loss or injury actually sustained, rather than the price paid or agreed to be paid on full performance, is the proper measure of damages except where the contract provides by way of stipulated damages that the consideration shall be the amount recoverable." The judgment and order should, therefore, be reversed and a new trial granted, with costs to appellants to abide the event.