HARRY ALEMIAN *vs.* AMERICAN EXPRESS COMPANY.

Suffolk. January 17, 1921. — March 3, 1921.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & JENNEY, JJ.

*Contract,* Performance and breach, Validity.

The declaration in an action of contract against an express company was in two counts, it being alleged in the first count in substance that the plaintiff delivered to the defendant American money and that the defendant agreed to pay it or its equivalent to the plaintiff's sister in Russia and that the defendant did not perform its agreement or return the money to the plaintiff; and the second count being for money had and received by the defendant to the plaintiff's use. At the trial it appeared that the plaintiff delivered the money to the defendant with a fee for its transmission and that the parties exchanged docu-

ments containing the following provision: "It is understood and agreed that this transfer is to be made without responsibility on the part of the . . . Company or its correspondents, for any loss occasioned by errors or delays in the transmission of the message by telegraph or cable companies, or for the acts or omissions of the correspondents or agencies necessarily employed by the . . . Company in the transfer of this money, all risks for which are assumed by the sender." It also appeared that, by cabled instructions of the defendant to its correspondent in Petrograd in Russia, the requisite amount in Russian money was transmitted to its correspondent bank nearest the plaintiff's sister, whence in usual course the transmission would be completed by Russian postal money order. The plaintiff introduced evidence tending to show that his sister never received the money; that he could not speak English; that, when he paid the money to the defendant and signed and received documents, neither he nor his only companion could read or understand English, and that neither paper was read or explained to him. There was no evidence that the defendant's representative in the transaction knew or was informed that the plaintiff could not read nor understand the contents of the paper or that the plaintiff's signature was procured through fraud; nor was there evidence that the sub-agents of the defendant in Russia were not in every way suitable. *Held*, that

(1) Requests by the plaintiff for rulings that he was entitled to recover on the first and the second counts, respectively, were denied properly;

(2) It could not be ruled in the circumstances that the provisions of the contract between the parties exonerating the defendant from liability, quoted above, were invalid because the plaintiff could not speak or read English and their contents were not read to him.

CONTRACT, with a declaration in two counts, the first count containing allegations in substance that the plaintiff paid the defendant, "a common carrier . . . engaged in the business of transmitting money from one person to another," $259.17 to procure the transfer of $250 or its equivalent in Russian rubles to his sister in Erivan in Russia, that the defendant accepted the money "and agreed to pay" it or its equivalent to the plaintiff's sister in Erivan, but that the sum of money or its equivalent was not paid as agreed and that the defendant had refused to return it. The second count was for money had and received by the defendant to the plaintiff's use. Writ in the Municipal Court of the City of Boston dated May 14, 1920.

Material facts agreed upon and in evidence at the trial in the Municipal Court are described in the opinion. At the close of the evidence, the plaintiff asked for rulings, the first and second of which are described in the opinion. The others were as follows:

"3. In the paper signed by the plaintiff, and in the receipt given to the plaintiff by the defendant the (similar) clauses

disclaiming liability was not a valid part of the contract between the parties, since it was not brought specifically to the attention of the plaintiff, who could not read English.

"4. The clause in the receipt given to the plaintiff by the defendant, and in the paper signed by the plaintiff, cannot be considered a part of the contract, because some of the words intended to form part of the contract are indistinguishable.

"5. No time being fixed in the contract for the payment of the money to the payee, the law will presume a reasonable time.

"6. The defendant not having paid the money to the payee, or returned it to the plaintiff within a reasonable time, was *prima facie* in default.

"7. It was the defendant's duty, within a reasonable time, to pay the foreign money to the payee, or if this could not be done, to notify the sender of that fact, and that the defendant was holding the money subject to the sender's order."

The judge denied the requests, found for the defendant and, at the request of the plaintiff, reported the case to the Appellate Division, who ordered the report dismissed. The plaintiff appealed.

The case was submitted on briefs.

*A. V. Harper, W. P. Burhoe & F. W. Falvey,* for the plaintiff.

*A. M. Pinkham,* for the defendant.

PIERCE, J. This is an action of contract to recover $259.17, with interest from August 20, 1917, and is before this court on an appeal from the Appellate Division of the Municipal Court of the City of Boston.

A concise statement of the facts, as shown by the reported testimony and agreed facts, is as follows: On August 20, 1917, the plaintiff made a signed written application to the defendant for a foreign cable transfer of money to his sister at Erivan, Russia. The defendant received from the plaintiff $250, which was the then equivalent of eleven hundred and thirty-six Russian rubles, and $9.17 for the expenses and charges of the transfer, — a total of $259.17, for which the defendant gave its receipt to the plaintiff. The application and receipt contained the following provision: "It is understood and agreed that this transfer is to be made without responsibility on the part of the American Express Company or its correspondents, for any loss occasioned by errors or delays in the transmission of the message by telegraph or cable

companies, or for the acts or omissions of the correspondents or agencies necessarily employed by the American Express Company in the transfer of this money, all risks for which are assumed by the sender." The application and receipt were indorsed "Accepted subject to delays risks and consequences resulting from war." The defendant cabled instructions to its correspondent bank in Petrograd, "to transfer the amount in Russian rubles for transfer to the payee at destination, which is in the extreme south eastern part of Russia, Erivan being a city of some 20,000 inhabitants in the Caucacus Mountains near the Persian Frontier." On August 20, 1917, the Petrograd bank transferred the amount, in Russian rubles, to Odessa, to its correspondent bank nearest destination, whence in the usual course the amount of Russian rubles would be forwarded to the payee at destination by Russian Postal Money Order. The Petrograd bank debited the account of the defendant for the amount of eleven hundred and thirty-six rubles, plus 2.28 rubles for the bank's commission and expenses in the transaction, and on August 20, 1917, mailed a notice, which was received on November 22, 1917, of its compliance with said instructions, and of the debit to its account. On August 21, 1917, the plaintiff sent a cablegram to the payee, which she received about September 1, 1917, notifying her that he had sent the money. On March 2, 1918, the defendant instructed the Petrograd bank that the payee had changed her residence in Erivan, and requested that payment of the funds be made at the new address if they were undelivered. The defendant has received no communication regarding the plaintiff's transfer of money, has never received any word from Russia that the amount in Russian rubles was or was not delivered to the payee at destination, nor has the amount been returned to it as undeliverable or credited back to its account; and correspondence addressed to points in Russia is returned as undeliverable.

The sister of the plaintiff, the payee named in the money order, testified that she had never received the money; that about September 1, 1917, she received a cablegram from the plaintiff notifying her of the transmission of the money to her; that she visited various banks in Erivan in an effort to get the money but was unsuccessful; that about May 1, 1918, she fled from Erivan; that she wrote four times to her brother before leaving Erivan.

The plaintiff testified "that he went to the defendant's office in Boston with another man; that he could speak very little English himself, and could not read or write English at all, and that his companion could speak English no better than the plaintiff; that the plaintiff told the clerk at the defendant's office that he wanted to send $250.00 to his sister in Russia, whose name and address he had printed on a slip of paper which he handed to the defendant's clerk; that he thereupon signed a paper which the clerk presented to him and received another paper which the clerk gave to him; that neither paper was read or explained to him, nor could he read or understand them himself. There was no evidence that the express clerk knew or was informed that the plaintiff could not read or did not understand the contents of the papers. These papers, it is conceded, were the 'application for foreign cable transfer' and 'receipt for money to be transferred by telegraph.'"

From the admitted facts, it indisputably appears that the plaintiff knew that the defendant did not undertake itself through its own agents to deliver the purchased rubles, but did agree to transfer them through corresponding sub-agents to the payee at the place of destination. There is no evidence or claim that the selected sub-agents in Russia were not in every way suitable persons to receive and transmit the money, and there is evidence that the defendant transferred the money of the plaintiff to the sub-agent in Petrograd, that that agent in turn transferred the money to Odessa, and that the money has not been returned as undelivered to the plaintiff.

In these circumstances the plaintiff was not entitled to his first and second requests for rulings, that "On all the evidence, the plaintiff is entitled to recover under his first count. [and] . . . under his second count." *Darling* v. *Stanwood*, 14 Allen, 504, 507. *Dorchester & Milton Bank* v. *New England Bank*, 1 Cush. 177. *Britton* v. *Niccolls*, 104 U. S. 757. *Katcher* v. *American Express Co.* 94 N. J. L. 165.

The agreement above set forth exonerating the defendant "for any loss occasioned by errors or delays . . . or for the acts or omissions of the correspondents or agencies necessarily employed . . . in the transfer of this money, all risks for which are assumed by the sender," upon the evidence precludes any recovery by the

plaintiff on either count against the defendant. The plaintiff signed the agreement; the defendant had neither actual nor constructive knowledge that the plaintiff could not read English, and there is no claim that the signature of the plaintiff was procured by fraud or by misrepresentation and concealment of the terms of the agreement. *McKinney* v. *Boston & Maine Railroad*, 217 Mass. 274. *Secoulsky* v. *Oceanic Steam Navigation Co.* 223 Mass. 465. *Tremont Trust Co.* v. *Burack*, 235 Mass. 398. The third request was denied rightly.

The requests numbered 4, 5, 6 and 7 are not applicable to the facts in evidence, and were denied rightly.

*Order dismissing report affirmed.*