## A. Weiss, Appellee, v. Liberty Trust and Savings Bank, Appellant.

### Gen. No. 27,381.

1. BANKING—*liability of bank as forwarder to Russia.* A bank which accepted money to be forwarded to a person in Russia "subject to rules and regulations of European post offices," and subject also to a provision making the bank not liable for delay by European post offices or any other cause beyond its control, is not liable as for failure to deliver the money where the evidence shows that shortly after it was remitted by the bank, the Russian Government was overthrown and it became impossible to ascertain whether the money was actually delivered to the payee, that the bank had sent it through its regular agents and channels to its correspondent bank in Russia which received it, there was no evidence of lack of ordinary care in the selection of agents and that war conditions existing in Russia made it practically impossible to get any information or deliver money to the payee personally.

2. BANKING—*extent of liability for refund of money returned in depreciated exchange.* A bank which received from plaintiff a specified sum to be delivered personally to a bank in Poland for delivery to plaintiff's wife and which has accepted such money subject to delay in Europe from any cause beyond the forwarder's control and which has attempted to make personal delivery of such money but, because of war conditions and lack of communications with Russia, the money has been returned in depreciated foreign exchange, is liable to the customer for the equivalent currency value of such exchange and not for the amount of originally paid to it to be forwarded.

Appeal by defendant from the Municipal Court of Chicago; the Hon. Asa G. Adams, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Reversed and judgment here. Opinion filed January 10, 1923.

Rubovits & Hirsch, for appellant.

No appearance for appellee.

Mr. Justice Taylor delivered the opinion of the court.

The plaintiff, A. Weiss, brought suit against the defendant bank to recover three amounts of money which he claimed he had paid to the bank to be delivered to Enja Wisokaja, Tulczin, Podolskoj, and recovered judgment in the sum of $480. This appeal is therefrom.

On November 12, 1917, the plaintiff gave to the defendant bank $145, to be sent to Enja Wisokaja in Russian Poland, and received from the defendant bank a receipt which recited that it was received "subject to rules and regulations of European post offices." And contained, also, the following language: "It is agreed that we are not liable for any delay caused by European post offices or any other cause beyond our control."

The plaintiff, on November 27, 1917, gave $148 more to the defendant to be sent to the same person in Russian Poland. He received a receipt therefor containing similar rules and regulations. Both receipts showed that the equivalent amount in Russian money was 1,000 rubles. Some time in April, 1920, the plaintiff gave also the sum of $220 to the defendant bank to be delivered personally to a bank in Poland for plaintiff's wife. The plaintiff testified that he gave the money to be delivered to his wife. It is the evidence on the part of the defendant that a receipt with conditions similar to the others was given for that sum, $220, by the defendant bank which shows that it was to be sent to one Leib Oknor for Ena Wysoka, Tulczin. The evidence of Landon, cashier of the defendant bank, is to the effect that the two amounts, $145 and $148, were cabled to the American Express Company to be sent to the respective payees in Poland; that it was the custom of the bank to remit the amounts deposited with it to the American Express Company to be sent by that company to the Russian Asiatic Bank in Petrograd in order that the latter bank might forward the amounts to the representa-

tives of the Russian Government who would forward the amounts to the respective payees in Russia.

The evidence shows that the two remittances, which when changed into Russian money became 1,000 rubles each, were forwarded by the American Express Company direct to the Russo Asiatic Bank, prior to December 1, 1917.

A letter of the American Express Company, dated September, 1920, which was offered in evidence, recites that as it cannot now communicate with Russia it is not able to determine whether or not the remittances in question have been paid. As to the $220, Landon testified that on a recent trip to Europe it was delivered by him personally to the Department Bank at Warsaw with instructions to forward it to the payee. He further stated that they tried to get that money back and finally in January, 1921, received back 38,000 Polish marks, worth $60.24, which amount the bank has offered to refund to the plaintiff. His evidence further shows that the defendant has communicated from time to time with the American Express Company concerning the other two remittances, but that the American Express Company has not been able to establish any communication with the European bank.

There is some controversy in the evidence as to whether or not Landon promised the plaintiff that some or all of the money in question would be delivered within a given time. Landon, the cashier, however, denies that any such promise was made and the receipts help to corroborate him, also the fact that the war was on and it was then known that delivery would be uncertain. The evidence shows that after the remittances in question had been cabled over, the banks of America discontinued doing business with Russia and that all mail connections were cut off. One Lawrence, settlement clerk of the American Express Company, testified that a reasonable time, on November

12, 1917, for an order of rubles to be delivered to Enja Wisokaja, Tulczin, would be from six to eight weeks; that in the early part of December, 1917, the intervention in Russia of the Soviet government and the overthrow of the Kerensky government prevented forwarding money orders to Russia after December, 1917; that after that time deliveries could not be guaranteed at all; that all mail and cable services between the United States and Russia was cut off; that if an order had been given to the American Express Company to forward 1,000 rubles on November 12, 1917, taking into consideration the conditions on the other side, the order could not have been delivered and no refund could be obtained from Russia after December 1, 1917; that money cannot be refunded until a government is established in Russia and they are able to find out whether money that was sent was actually delivered; that the American Express Company considers a delivery of the money to the correspondent bank in Russia as a delivery; that at present there was no means of telling whether a payee had received the money.

On cross-examination the plaintiff was asked the question: "You don't know now whether or not your wife got that money?" To which he answered: "Oh, I got a letter. Sure she has never received the money. Here is the letter." Counsel for the defendant objected to the answer and moved that it be stricken out as hearsay. His motion was overruled. It is admitted that the plaintiff demanded the return of the amounts of money here sued for, before the beginning of this suit.

No brief has been filed on behalf of the plaintiff.

It is contended on the part of the defendant that owing to the terms of the receipt and the conditions in Russia which existed in November and December, 1917, and thereafter, that no liability on the part of the defendant was shown, save to the extent of $60.24, which the defendant has offered to refund.

In the case of *Alemian v. American Exp. Co.*, 237 Mass. 580, 130 N. E. 253, where the plaintiff on March 20, 1917, gave the defendant $250 to cable to the plaintiff's sister in Russia and received from the defendant a receipt and the defendant cabled instructions to its correspondent in Petrograd, which bank debited the defendant's account, and where there was no evidence that the money had ever been delivered, and the receipt given to the plaintiff was marked subject to delays and risks and causes beyond the defendant's control, the court said: "From the admitted facts, it indisputably appears that the plaintiff knew that the defendant did not undertake itself through its own agents to deliver the purchased rubles, but it agreed to transfer them through corresponding subagents to the payee at the place of destination. There is no evidence or claim that the selected subagents in Russia were not in every way suitable persons to receive and transmit the money, and there is evidence that the defendant transferred the money of the plaintiff to the subagent in Petrograd, and that agent in turn transferred the money to Odessa, and that the money has not been returned as undelivered to the plaintiff." The court then held that under these circumstances the plaintiff was not entitled to recover.

It would seem that where the evidence shows that the money which the defendant has sent has gone through regular agents and the defendant has thus performed its duty as far as reasonably possible, it is not necessary for the defendant to show that the payee actually received the money; and, further, it would seem to be reasonable to hold that where there is no evidence that the defendant did not exercise ordinary care in the selection of its agents there is no liability even though the money was not actually delivered.

Then, too, the condition in the two receipts of November 12 and November 27, 1917, that the defendant was not to be liable for any delay caused by the Eu-

ropean post offices or any other cause beyond their control, bearing in mind the war which was then in progress, was in itself sufficient to exclude liability on the part of the defendant.

As to the claim for $220: It was held in *Fliker v. State Bank*, 94 N. Y. Misc. 609, 159 N. Y. Supp. 730, that where a bank received $217.50 "for a remittance through the European postal service of five hundred rubles to Russia," and on account of the war delivery could not be made, and the five hundred rubles were returned to the bank to await the order of the plaintiff, the bank was only liable for five hundred rubles, or its equivalent at that date, which was $171.50. The reason is that a bank does not agree to transmit physical things, in specie, but to transmit the equivalent currency value at that time to the place of destination, so, when afterwards there is a return of what the customer has sent, he is entitled to the equivalent currency value, that is, in the instant case, $60.24, or 1,000 rubles. As the court said in the *Fliker* case, *supra:* "Plaintiff dealt in rubles, and he is entitled to his rubles or their equivalent at the time of his demand."

The judgment will, therefore, be reversed and judgment entered here in favor of the plaintiff and against the defendant in the sum of $60.24.

*Reversed and judgment here.*

THOMSON, P. J., and O'CONNOR, J., concur.