## Louis Fishman, Appellee, v. West Side National Bank of Chicago, Appellant.

### Gen. No. 28,088.

1. APPEAL AND ERROR—*right of review not dependent upon submission of propositions of findings.* The Appellate Court may review a record on appeal on the ground that the judgment is contrary to the law and the weight of evidence on the appeal of a party which submitted no propositions of law or findings of fact.

2. BANKING—*performance of agreement to forward money to Russia during the war.* An agreement to transmit 25,000 rubles to a bank in Russia is shown to have been fully performed by the forwarding bank by evidence that it purchased drafts aggregating that amount and sent them by registered mail properly addressed to the Russian bank, and the forwarding bank is not liable for any delay or failure to deliver such mail or for its inability to ascertain whether the money was actually delivered, no deposit book having ever been received by it, especially where the evidence shows that the money was transmitted two months before severance of mail connections by the United States and Russia in 1917 and after the overthrow of organized government in that country.

3. EVIDENCE—*judicial notice of revolutionary conditions in Russia.* The court may take judicial notice of the chaotic and revolutionary conditions that prevailed in Russia for several years following 1917, and that they necessarily affected the transmission of money to that country.

4. BANKING—*proof of terms of agreement for forwarding money to foreign country.* A bank cannot be held liable as for breach of its contract to forward money to Russia by its failure to deliver to plaintiff a deposit book showing the deposit of such funds in the

Russian bank, where the documentary evidence shows that plaintiff's agreement did not include delivery of such deposit book to plaintiff but only the transmission of the funds in question to a specified bank, which agreement was fully performed.

Appeal by defendant from the Municipal Court of Chicago; the Hon. HOWARD HAYES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1922. Reversed with finding of facts. Opinion filed March 13, 1923. *Certiorari* denied by Supreme Court (making opinion final).

LITSINGER, HEALY & REID, for appellant.

MOSES, ROSENTHAL & KENNEDY, for appellee; ROBERT BACHRACH, of counsel.

MR. JUSTICE MORRILL delivered the opinion of the court.

This is an appeal from a judgment of the municipal court of Chicago in favor of plaintiff for $4,339 upon a trial before the court without a jury. The trial commenced October 27, 1921, and was continued and resumed on different dates until April 22, 1922, when judgment was entered in accordance with the finding of the court. The remarks of the trial judge during and at the close of the trial indicate that the case was not decided upon its merits but that in reaching his conclusions he was actuated by a feeling of sympathy for plaintiff and by the belief that defendant could better afford to incur loss and was better able to pay the expenses of an appeal than plaintiff. Defendant has appealed and urges a reversal for the reason that the judgment is contrary to the law and the manifest weight of the evidence.

According to his statement of claim as finally amended, plaintiff sought to recover $4,339, which he alleged he had paid to defendant September 27, 1917, in consideration of which defendant agreed to have deposited to the credit of plaintiff in the Moscow Gov-

ernment Bank located at Hritzew, Iziaslaw County, State of Wolyn, Russia, 25,000 Russian rubles and to deliver to plaintiff in Chicago within six months thereafter a deposit book therefor, and in case of failure to deliver said deposit book to return the money to plaintiff, and further alleged that because default had been made in the delivery of the deposit book, plaintiff was entitled to recover. The statement of claim further alleged that after making the agreement above set forth and after the payment of the money defendant gave to plaintiff a receipt written and printed in the English language, and falsely and fraudulently represented to plaintiff that it contained a correct statement of the oral contract above set forth, and thereby induced plaintiff to enter into the transaction, well knowing that plaintiff was unable to read the English language, and that by reason of this fraud plaintiff has elected to rescind and disaffirm the contract. The receipt is set forth in full, from which it appears that the material portions thereof which state defendant's undertaking in the matter were written in Russian, an English translation thereof being furnished. It is true that certain conditions were printed thereon in English, but it does not appear from the record that defendant relies upon these conditions other than the stipulation that the remittance was to be sent by mail, which must have been understood by plaintiff, as there is no evidence of any undertaking of defendant to send the money in bulk or to employ any other method of transmission.

To these conflicting claims, one of which is based upon the alleged agreement and the other upon the disaffirmance thereof, defendant filed its affidavit of merits, alleging that on or about September 27, 1917, plaintiff requested defendant to purchase for him drafts for 25,000 rubles and directed defendant to forward said drafts when purchased to the Government Bank at Moscow to be credited to the account of plain-

318    APPELLATE COURTS OF ILLINOIS.

Fishman v. West Side Natl. Bank of Chicago, 228 Ill. App. 315.

tiff; that defendant thereupon purchased from the Irving National Bank of New York drafts for 3,000 rubles and 2,000 rubles, respectively, drawn on the correspondents of said New York bank in Petrograd, and also purchased from the American Express Company a draft for 20,000 rubles and forwarded said three drafts for 25,000 rubles to the Government Bank of Moscow with directions to said bank to deposit said checks to the credit of plaintiff and return a deposit book to defendant; that subsequent to the date of mailing said drafts, trade relations, mail service and communications of every kind between the United States and Russia were terminated, and it has been and still is impossible for defendant to obtain any information with reference to said drafts; that the Irving National Bank of New York and the American Express Company, from whom said drafts were purchased, are unable to communicate with their correspondents in Russia and are unable to ascertain whether or not said drafts have been paid or presented; that defendant has been unable to communicate in any way with the Russian Government Bank in Moscow, and cannot ascertain whether or not the drafts have been deposited to the credit of plaintiff in said bank; that defendant acted as an agent of plaintiff and used all reasonable care in the transaction of said business and is not indebted to plaintiff in the sum of $4,339 or any other sum.

Thereafter plaintiff filed a replication and an amendment to his amended statement of claim, in each of which it was denied that defendant had forwarded to the Moscow Government Bank the three drafts mentioned in the affidavit of merits, and that the failure to so forward the drafts was a breach of the contract by defendant constituting ground for rescission and disaffirmance of the contract. We therefore conclude that the final issue presented by plaintiff, and upon which the case was tried, was the alleged failure of

defendant to forward the drafts to the Moscow bank.

Plaintiff testified that about the middle of September he saw one Ellenbogen, an officer of the defendant bank, and asked him what he should do to bring his sister and her children from Russia to the United States, and was assured by him that the bank would deposit the money from him in Russia and give him a book showing such deposit; that on the following day he took this money to Ellenbogen, who gave him a receipt therefor and promised to give him a book, meaning a deposit book from the Moscow bank, for the 25,000 rubles; that he brought the money to him September 27, 1917, and that he could not read the receipt.

The evidence shows that the first transaction between the parties occurred September 24, 1917. On that date Ellenbogen was absent from the bank and plaintiff transacted his business with one Kalis, the foreign exchange teller. Plaintiff at that time purchased 22,000 rubles and directed Kalis that they be forwarded to the Moscow Government Bank to be deposited in his name. Kalis gave him a receipt dated September 24, 1917, which is shown in the record and was numbered 879. It was a receipt for $3,839 in payment for 22,000 rubles to be transmitted to Russia as hereinbefore stated. The receipt was made out in the handwriting of Kalis and contains information written in longhand in Russian, which Kalis must have obtained from plaintiff. When Ellenbogen returned to the bank on the following day he learned of the transaction and immediately bought from the American Express Company 20,000 rubles, which, with a draft for 2,000 rubles also purchased by defendant from the Irving National Bank of New York, made up the required amount. Written memoranda of these purchases executed by the sellers were in evidence. On the same day plaintiff called at the bank and told Ellenbogen of his purchase of the 22,000 rubles, and stated that he was buying more rubles and requested

320 APPELLATE COURTS OF ILLINOIS.

Fishman v. West Side Natl. Bank of Chicago, 228 Ill. App. 315.

Ellenbogen to hold the drafts for a couple of days. Plaintiff again called September 26 and said that he wished to buy 3,000 more rubles and that he would bring in the money on the following day, whereupon Ellenbogen bought 3,000 additional rubles from the Irving National Bank of New York and received a memorandum dated September 27 showing the transaction. At that time the receipt numbered 879 was taken up and Ellenbogen on September 27, 1917, wrote a new receipt in his own handwriting, showing a payment of $4,339 in payment for 25,000 rubles to be transmitted to Russia as above stated. This receipt was in all respects identical with the former receipt except as to the amount and date.

Upon the receipt of the three drafts for an aggregate amount of 25,000 rubles, Ellenbogen sent them to the Moscow Government Bank by registered mail on October 3, 1917. All of these transactions are abundantly proved by the documentary evidence in the case. About two months after sending the registered letter containing the drafts, the United States ceased to receive mail from Russia until the summer of 1921. This termination of communication between the United States and Russia was caused by war conditions and particularly by the overthrow of the Krensky government in Russia in November, 1917. Thereafter Russian rubles ceased to have any value.

The record shows in detail the efforts made by defendant to trace the drafts through letters of its own and by correspondence with the Irving National Bank, the American Express Company and the postal authorities of the United States. The witnesses for defendant testify that no promise was ever made to return to plaintiff the money in case of the failure to receive the deposit book showing the deposit of the rubles in the Moscow bank.

We regard the testimony of plaintiff that such an agreement was made as highly improbable. It is con-

trary to the usual and ordinary course of business in such cases. The defendant ceased to have any control over the money after it had deposited the drafts in the mail. Defendant acted promptly in carrying out plaintiff's instructions. Plaintiff's testimony is contradicted by the documentary evidence in the case and is not corroborated by any testimony which we regard as reliable as against the facts established by the written instruments in evidence. Plaintiff's testimony is corroborated to some extent by that of his father, who told of a promise by Ellenbogen to return to plaintiff his money if a deposit book was not delivered to plaintiff in five or six months, but on cross-examination his recollection as to the conversation seems to be very hazy and he was unable to remember whether the conversation was carried on in Yiddish or in English, and stated that his son told him what Ellenbogen had said. A further attempt to support the theory of plaintiff's case is made by the testimony of two of his brothers-in-law, who testified to overhearing a conversation between plaintiff and Ellenbogen in April, 1918, in which Ellenbogen again promised to return plaintiff's money in case the deposit book was not received within two months. The version of the transaction given by Ellenbogen is corroborated by the testimony of three former officers of the bank, who are no longer in its employ and who were entirely disinterested witnesses. The trial judge, who saw the witnesses and heard them testify, stated in the course of the trial that he did not believe the account of the transaction as given by plaintiff, and, in substance, that the preponderance of the evidence was in favor of defendant.

It is first contended by appellee that the record presents no case for our consideration, in view of the fact that defendant submitted no propositions of law or finding of facts. Appellee relies upon our former decision in *Pittsburgh, C., C. & St. L. Ry. Co. v. Chicago City Ry. Co.*, 221 Ill. App. 23. This decision was reversed

322 APPELLATE COURTS OF ILLINOIS.

Fishman v. West Side Natl. Bank of Chicago, 228 Ill. App. 315.

by the Supreme Court in *Pittsburgh, C., C. & St. L. Ry. Co. v. Chicago City Ry. Co.*, 300 Ill. 162, so that any further discussion of this point is unnecessary.

By its written agreement defendant undertook to transmit 25,000 rubles to the Moscow Government Bank. This agreement was fully performed by the purchase of the three drafts aggregating that amount and sending them by registered mail properly addressed to the Moscow bank. Defendant did not undertake to ship the actual money in Russian currency or coin. *Alemian v. American Exp. Co.*, 237 Mass. 580, 130 N. E. 253. Under the terms of the contract defendant cannot be held liable for any delay or failure of the Russian postal authorities to deliver the registered mail. *Strohmeyer & Arpe Co. v. Guaranty Trust Co. of New York*, 172 N. Y. App. Div. 16, 157 N. Y. Supp. 955. Even if the drafts were never received by the Moscow bank and were returned to defendant, plaintiff is not entitled to recover more than 25,000 rubles or their equivalent in money of the United States at the current rate of exchange at such time as plaintiff, acting with due diligence, should have ascertained and reported nondelivery. *Katcher v. American Exp. Co.*, 94 N. J. L. 165; *Gelfand v. State Bank*, 172 N. Y. Supp. 99. The court may take judicial cognizance of the chaotic conditions that have prevailed in Russia for several years, and that they necessarily affect the transmission of money to that country. *Rosenblatt v. Josephsohn*, 172 N. Y. Supp. 719.

Defendant has not pleaded impossibility of performance due to the revolutionary party in Russia, whose sovereign authority is not recognized, but on the contrary relies upon the full performance of its undertaking. The written receipt which defendant gave to plaintiff for the money, which we consider the best evidence as to the actual character of the transaction, does not show any agreement on the part of defendant to deliver a deposit book showing the deposit of the

money in the Moscow bank.   The preponderance of the oral testimony is to the effect that no such agreement was ever made.   Appellee claims to have the right to a rescission of the contract on acount of the fraud of defendant at the time the transaction took place.   The charge of fraud is wholly unsustained by the evidence. In a very similar case it has been held that the plaintiff could not rescind and recover the amount deposited, but only damages, if any, for the breach, if any, of the contract since restitution to plaintiff would not leave defendant *in statu quo.   Scheibe v. Zaro,* 199 N. Y. App. Div. 807, 192 N. Y. Supp. 433.   In that case suit was brought to recover money deposited with a New York City banker for remittance to a Berlin bank of an equivalent amount in German marks.   The banking law allowed five days for making such remittances. Defendant partially performed by transmitting the marks to its Berlin correspondent and claimed to have made the remittance by a draft inclosed in its letter shortly after the expiration of such five days.   It was held that the trial court erred in excluding evidence that the first ship carrying mail to Germany after plaintiff's deposit, sailed two days after defendant mailed its letter with the remittance in question and that the depositor was not entitled to rescission and a recovery for the amount deposited, but only damages for the breach of the contract.   In the present case, no breach of defendant's contract has been shown, and even if it had agreed to deliver a deposit book and had failed in that respect, plaintiff's recovery would be limited only to the damages sustained by such breach of the contract.

The judgment of the municipal court was contrary to the law and the manifest weight of the evidence, and is therefore reversed with a finding of facts.

*Reversed with finding of facts.*

BARNES, P. J., and GRIDLEY, J., concur.

Finding of facts.   The court finds as ultimate facts

that defendant agreed to remit 25,000 rubles to the Moscow Government Bank to be deposited to the credit of plaintiff; that it fulfilled this agreement; and that it did not agree to deliver to plaintiff a deposit book showing the deposit of this sum in the said Moscow bank.