JAMES MANSFIELD & others *vs.* GEORGE P. TRIGG & others.

The sale of a specific number of packages of an article, at a given price a package, is an entire contract ; a purchaser cannot rescind it as to some packages, and affirm it as to others.

CONTRACT for the price of certain barrels and half barrels of mackerel sold by the plaintiffs to the defendants. The answer alleged that the plaintiffs, in order to induce the defendants to buy the mackerel, represented that they were in good order, late caught, and according to the inspection marks, and warranted that they should be of the first quality of late caught fish, and should be of the grades and sizes indicated by the inspection marks ; that upon receipt of them they found they were not as they were warranted and represented to be; that those marked and inspected as No. 1 were of a less size than that required by law ; that those that were marked No. 2 were of inferior quality, were not late caught, were not properly branded as No. 2, and were not as they were warranted and represented to be.; that at

the time of purchase, the goods were not shown to the defendants; that they relied wholly upon the warranty and representation of the plaintiffs, and upon their agreement that the fish should be inspected according to law, and be truly branded and marked; that, upon finding that the fish were not according to the contract, they refused to receive them, and so notified the plaintiffs, and returned a part of them to the plaintiffs; and that they did not owe the plaintiffs anything on account of the mackerel refused and returned.

At the trial in the Superior Court, before *Brigham*, C. J., it appeared that all the mackerel were purchased by the brand put upon them by the deputy inspector, who was one of the plaintiffs; that part were branded No. 1 and part No. 2; and that the purchase, which was made April 28, 1870, comprised all the mackerel of those brands which the plaintiffs had on hand.

Robert C. McKenzie testified that he was the agent of the defendants; that they had a house in New York and one in Gloucester; that as such agent he went to the plaintiffs' store in Gloucester, and there saw James Mansfield, the senior partner of the plaintiffs' firm; that he asked him what amount of No. 1 and No. 2 late caught shore mackerel they had on hand; that Mansfield replied they had a large quantity, and asked how many he wanted to buy; that he then asked if they were all late caught, prime No. 1 and No. 2 shore mackerel; that Mansfield replied they were, and that the firm would prefer to sell a part and keep a part; that at this time he had not seen the mackerel; that it was before nine o'clock in the morning; that he then said, "Mr. Mansfield, I want to buy all the late caught shore No. 1 and No. 2 you have, and your money is ready;" that the price had been named, viz: $23 for No. 1 per barrel, and $8.50 for No. 2 per barrel; that Mansfield replied in substance, "You can have the mackerel," saying he had from 600 to 700 barrels; that Alfred Mansfield, one of the plaintiffs, who was in the store, directed the cooper to open some of the mackerel, which he did, opening from three to five barrels, some No. 1 and some No. 2; whereupon he asked Alfred Mansfield if those opened were a fair sample, and he replied, "I know no difference."

James Mansfield testified that he represented the mackerel sold as late caught, shore mackerel, and of good quality; that they were all sold April 28, 1870, but that he sold only one half in the morning when McKenzie was at the store; that he sold the other half a little later in the forenoon; that the sale of the other half was made at or near the post-office, in Gloucester; that he had a paper in his hand at the store when McKenzie called, on which was a statement of all the mackerel they had on hand; that he either showed the paper to McKenzie or read it to him, ne was unable to say which; that he could not now state from recollection the number they had on hand at that time, but that he had them all put down on the paper referred to, and McKenzie was informed both as to the number and kind of mackerel they had for sale.

The mackerel sold were delivered to the defendants, at the plaintiffs' wharf in Gloucester, at different times, and in various quantities. All were delivered before May 20, and the amounts and kinds delivered at the several times were determined by the convenience of the plaintiffs. No examination of the mackerel, except at the time of purchase, was made until their arrival in New York. About June 1, 1871, the defendants returned to Gloucester 34 half barrels of No. 1 mackerel, and 39 half barrels of No. 2 mackerel, having notified the defendants May 20, 1871, that the mackerel returned were not of the classes and quality purchased, and they notified the defendants, at the time the mackerel arrived at Gloucester, that they were at the steamboat wharf, and had been returned for the cause above mentioned. About June 2, 1871, the remainder of the mackerel arrived at New York, when the defendants examined 35 barrels of No. 1 mackerel, and notified the plaintiffs that they were not of the kind indicated by the brand, and at the same time notified them that they should decline to receive them, and that they were at New York subject to their order.

The mackerel returned, and which the defendants declined to accept or receive, were not the whole of either brand sold, or the whole of either brand which the defendants received at the plaintiffs' wharf at any one time. The plaintiffs declined to receive

the mackerel or any part of them, or to have anything to do with them.

The plaintiffs asked the presiding judge to instruct the jury that the contract was an entire contract, and that the defendants had not the right to rescind it as to the mackerel returned or tendered back, and affirm as to the others; but that if there was a breach of the warranty as to the mackerel returned or tendered back, their only remedy was to obtain a deduction from the agreed price, and that such deduction would be the difference between the actual value of the article sold and what would have been its value had it corresponded to the warranty. But the presiding judge declined so to instruct the jury, and did instruct them that the contract was not an entire contract, and that the defendants had the right to rescind as to those packages, or either of them, which were not of the kind they were warranted to be · and that if the defendants found that any of the packages were not as warranted, they had the right to return them to the plaintiffs; and if they were returned, or tendered back, within a reasonable time, the jury were to deduct the contract price of such packages from the plaintiffs' claim, and return a verdict for the balance after making such deduction.

The jury having returned a verdict for a less sum than the amount demanded by the plaintiffs, the plaintiffs alleged exceptions.

*C. P. Thompson,* for the plaintiffs.

*S. B. Ives, Jr., & C. W. Richardson,* for the defendants.

WELLS, J. If it were to be held, upon the testimony of James Mansfield, that there were two contracts of sale, each of one half the whole number of barrels of mackerel; or that the entire contract was divisible in accordance with the several deliveries; it would not permit the defence on the ground of rescission to be maintained, because there has been no complete return according to either of such divisions.

The presiding judge ruled, not only that it was not an entire contract, but in effect that it was divisible so as to give the defendants a right of rescission as to each package or barrel separately. This was error. The entirety of the contract is **not**

destroyed by the circumstance that the subject of the sale is of such uniform character as to be readily divisible proportionally, by weight or measure, or is contained in packages of uniform quantity and value, even with the added circumstance that the consideration is named only by way of fixing the rate or price of the unit of such division. *Clark* v. *Baker*, 5 Met. 452. *Morse* v. *Brackett*, 98 Mass. 205.

The entirety may be broken by the concurrent act of both parties, so that a partial rescission may be effected. Thus when a part only of the goods have been delivered, upon a contract like the present, and one party refuses to complete it by delivering or accepting the remainder, the other party may then elect to treat such refusal as a repudiation or rescission of the unfulfilled part of the contract. If the seller refuse to deliver, the purchaser may recover back any excess of purchase money that has been paid by him, beyond the price of what has been delivered. *Hill* v. *Rewee*, 11 Met. 268. But if the breach of contract on the part of the seller is only in the quality, the other party cannot convert that into a rescission, but must, if he intends to rescind at all, rescind *in toto*. *Clark* v. *Baker*, *ubi supra*. These two cases illustrate the distinction, and the principle on which it rests. It is applicable to a defendant resisting payment, as well as to a plaintiff seeking to recover back what he has overpaid.

The defendants contend that the barrels returned were of a different kind, and therefore not within the contract at all ; relying upon the decision in *Gardner* v. *Lane*, 12 Allen, 39. We need not consider whether this defence could be maintained upon the evidence ; because, if it was intended to be presented to the jury by the instructions which are excepted to, it is not presented as a distinct and separate proposition, and therefore the verdict cannot be taken to have established the fact so relied on. The instructions are mainly if not exclusively adapted to the question of breach of warranty of quality. In strictness, both warranty and rescission import that the subject is within the contract, and passed to the purchaser by its operation. The rejection and return of articles of a different kind or description, not answering to the terms of the contract, does not stand upon the ground of

rescission; nor does the right to return them depend upon the existence of a warranty. By the instructions excepted to, if the jury found any breach of the warranty in respect to any of the separate barrels returned, they were permitted to give effect to the attempted rescission just so far as the proof of the breach extended. This would be the proper effect to give to proof that the articles returned were not of the kind contracted for; that is, that they did not come within the class or description of property purchased. But to give such effect to the return as a rescission or partial rescission requires that the contract be construed as the court below did construe it; to wit, as severable by the measure of each separate package. We find nothing in the case to justify such a construction.                *Exceptions sustained.*