ATLANTIC COMMUNICATION COMPANY, Appellant, *v.* LEOPOLD
L. ZIMMERMANN and Others, Respondents.

First Department, May 3, 1918.

Trial — evidence in rebuttal — erroneous instruction as to inferences
to be drawn from failure of witness to testify — right to directed
verdict on appeal, where request not made at trial — contract —
impossibility of performance.

Where in an action upon a contract made between plaintiff's commercial
manager and defendant's employee for the purchase of a wireless transfer
of money, it appears that there was no allegation in the answer either
that a different contract was made or that the contract as alleged was
only part of the one named, it was error for the court to refuse to allow
the plaintiff's secretary and treasurer to testify in rebuttal as to the
whole of a telephone conversation with defendant's employee who had
been called as a witness to establish a contract different from that
alleged.

Such conversation having been ruled out by the trial court, it was very
prejudicial to instruct the jury that it might draw inferences from the
fact that although plaintiff's secretary and treasurer had been called
as a witness, he had not testified as to any conversation with the defend-
ant's employee.

Where a plaintiff fails to ask for the direction of a verdict at the conclusion
of the trial, it is precluded from doing so upon appeal to the Appellate
Division.

Where a contract for the purchase of a wireless transfer of credit for a
certain number of marks which was to be made available for plaintiff's
immediate use in Berlin, Germany, could not be performed by reason
of the war conditions, plaintiff is entitled to the return of its money.
This is true, even if the contract be deemed one for the purchase of the
marks by the plaintiff, as the defendants had no marks to deliver and
could not have carried out the contract.

APPEAL by the plaintiff, Atlantic Communication Company,
from a judgment of the Supreme Court in favor of the
defendants, entered in the office of the clerk of the county of
New York on the 12th day of November, 1917, upon the
verdict of a jury, and also from an order entered in said clerk's
office on the same day denying plaintiff's motion for a new
trial made upon the minutes.

*Paul C. Schnitzler* of counsel [*Harold W. Hastings* with him
on the brief], for the appellant.

*I. Maurice Wormser* of counsel [*Daniel W. Blumenthal* with him on the brief; *Maurice B. & Daniel W. Blumenthal,* attorneys], for the respondents.

SHEARN, J.:

The complaint alleges an agreement whereby the defendants undertook on or about April 2, 1917, to transmit immediately by wireless and pay through one of their correspondents to a designated party at Berlin, Germany, within a reasonable time, which was fixed at about eight days, the equivalent of $45,625 at the agreed exchange rate of seventy-three, namely, the amount of 250,000 marks, and that on or about said date the plaintiff, relying thereupon, paid the defendants the sum of $45,625 and that the defendants failed to transmit the said amount and refused to return the $45,625. The answer consists substantially of a general denial except that it admits the payment to the defendants of $45,625 and failure to repay the same. Plaintiff introduced evidence showing that it bought of the defendants a wireless transfer of 250,000 marks and paid the defendants $45,625 therefor; that owing to the rupture between this country and Germany and the taking over by the Navy Department of the wireless station at Sayville the transfer was not effected and that the defendants nevertheless refused to repay. The defendants introduced evidence tending to show that after the order for the exchange was given and accepted but before the check was delivered, question having arisen as to the ability of the defendants to guarantee that the wireless transfer would be made under the existing circumstances, it was agreed that in the event that wireless transfers were interrupted and the transfer was prevented, the 250,000 marks should remain on deposit with the defendants in an account to be opened to the credit of the plaintiff, on which two per cent interest would be allowed if the money was subject to call and four per cent interest if it was left subject to ninety days' notice of withdrawal. The court submitted to the jury the question whether the contract was as claimed by the plaintiff or as claimed by the defendants. The jury found in favor of the defendants. Appellant contends that the verdict is against the weight of the evidence and that the trial court erred in excluding testimony offered by the plaintiff in rebuttal.

With regard to the exclusion of the rebuttal testimony, this was the situation: Plaintiff established the contract by the testimony of its commercial manager, Albert Brauckmann, who dealt with defendants' employee Siegfried Strauss. It appeared on the cross-examination of Brauckmann that during his conversation with Strauss in the plaintiff's office, immediately before delivering the check, there was discussion between them as to the likelihood of getting the wireless transfer through and that Strauss said it could not be guaranteed, in consequence of which Brauckmann did not wish to deliver the check. Strauss insisted that the transaction had already been completed by a verbal order given earlier in the day which had been accepted, and insisted upon getting the check. Thereupon Brauckmann, in the presence of Strauss, telephoned to Dr. Frank, the secretary and treasurer of plaintiff, who was at his home, and stated the situation to him, whereupon Strauss took the telephone and had a talk with Dr. Frank. Brauckmann heard Strauss say to Dr. Frank that if the message did not get over the defendants would open a mark account for the plaintiff and pay the plaintiff two per cent if the marks were to be turned over on demand or four per cent if the marks were to be taken over on ninety days' notice. When Strauss finished talking with Dr. Frank, Brauckmann resumed his telephone conversation with Dr. Frank, who told Brauckmann to deliver the check to Strauss " if they would send the money over by wire and the other question should be left open for further negotiation." The plaintiff did not put Dr. Frank on the stand on its direct case, but in rebuttal, after Strauss had taken the stand for the defendants and had testified in detail concerning his conversation with Dr. Frank, Strauss claiming that Dr. Frank had said " if the wireless should not go through we shall leave the 250,000 marks as a mark deposit with you and I shall decide tomorrow morning when I come to New York city whether that mark deposit should be on a two per cent or a four per cent interest basis," plaintiff called Dr. Frank and asked him to state what the conversation was that he had with Strauss over the telephone. This was objected to on the ground that it should have been a part of plaintiff's case in chief. While the court overruled this objection, the record shows that the court in effect sus-

tained the contention of defendants' counsel that the witness should not be permitted to give the actual conversation, for in making the ruling on the objection the court said: " You may confine yourself to categorical questions; you may take Mr. Strauss's testimony and put categorical questions to him." The record then shows the following: " Q. (Question read by stenographer.) [Defendants' counsel]: The court said you must confine yourself to categorical questions. [Plaintiff's counsel]: Exception." What the court evidently meant by confining plaintiff's counsel to taking the testimony of Strauss and putting " categorical " questions to Dr. Frank was that plaintiff's counsel should take the precise facts, as testified to by Strauss concerning his interview with Dr. Frank, and ask the witness to say " yes " or " no " as to whether each such precise fact testified to by Strauss was true. Plaintiff's counsel did not follow the court's direction and urges that the court erred in thus confining him and refusing to permit him to bring out from Dr. Frank the actual conversation between the latter and Strauss. In so limiting the testimony, we think that the learned trial justice erred. It might well have been that the witness could not have truthfully denied the testimony of Strauss, but that, if the whole conversation had been given, an entirely different construction might be given to what he had said as testified to by Strauss. It was no part of plaintiff's case in chief, because the plaintiff was relying upon a contract as made between Brauckmann and Strauss for the simple purchase of a wireless transfer. There was no allegation in the answer either that a different contract was made or that the contract as alleged was only part of the contract as made. The plaintiff was not required to negative such possible claims, but was merely required to establish the contract alleged. Its rights were seriously curtailed when it was prevented from showing by Dr. Frank, in rebuttal, what was the actual conversation between him and Strauss, after the defendants had sought to show by their witness Strauss that the contract actually made was different. from that pleaded and testified to in behalf of the plaintiff. The harm done by this ruling was emphasized in the charge to the jury, for the court said in its main charge: " Dr. Frank

was called as a witness but he did not testify to any conversation with Mr. Strauss; he was not asked anything concerning that. You have a right to draw such inferences as may properly be drawn from that circumstance." When this was called to the attention of the court, the learned trial justice said: "My notes show no such testimony. You say I have made an error; I want to correct it if I have made one. I may have omitted to note the testimony, being diverted in ruling upon objections, and I want the stenographer, in order that it may be made very plain, to read that testimony to the jury." Thereupon defendants' counsel said: "Your Honor is quite right; there is no testimony, and you will see that there is none. There was one question when you interrupted, and that is all." The testimony of Dr. Frank was then read to the jury, and the court said: "The jury has heard the testimony." The learned justice was correct as a matter of fact in saying that Dr. Frank had not testified to the conversation, but when the conversation was ruled out, it was of course error, and very prejudicial, to instruct the jury that it might draw inferences from the fact that although Dr. Frank was called as a witness he had not testified to any conversation with Mr. Strauss.

As there must be a new trial, it would serve no purpose to discuss the weight of the evidence. Plaintiff's counsel has requested that this court direct a verdict, but if the court were of the opinion that the evidence warranted a direction, it would be precluded from doing so because of the failure of the plaintiff to ask for a direction at the conclusion of the trial.

Assuming that it were found by the jury that the original contract for the purchase of the wireless transfer was not modified by any subsequent agreement to open a mark account with the defendants, drawing interest, there is a radical difference between counsel for the respective parties as to the rights and obligations of the parties upon a purchase of a wireless transfer. As the question is fully discussed in the briefs, and as there is to be a new trial, it may shorten litigation to dispose of this matter now.

Evidence was received on behalf of the plaintiff as to what is meant by a "wireless transfer for 250,000 marks," and it

was testified that a " wireless transfer is an order purchased for a wireless telegraphic transfer of a certain specified sum of money, in this case 250,000 marks, to a certain party upon either the receipt of the order abroad or upon a certain specified date." The witness testified in answer to the court that it means " that a credit is to be transferred by wireless from this side to the other side and made available to the purchaser of the credit." Jacob De Wald, an employee of the defendants, called by them as a witness, showed by his testimony that such was the understanding of defendants' foreign exchange department. Referring to a statement or notice of the transaction mailed by the defendants to the plaintiff, his testimony was as follows: " Q. And that statement said what? A. Merely wireless transfer Berlin, 250,000 marks at the rate of $73, $45,625. Q. And that contained the substance of the contract you said you had entered into with the Atlantic Communication Company? A. Absolutely. Q. And that is your contract? A. Absolutely; I was waiting for instructions. Q. Wait a minute, that you were to send by wireless 250,000 marks to Berlin, for account of the Atlantic Communication Company? A. Yes. Q. That is the contract? A. Yes."

It seems obvious that such was the case. What the plaintiff wanted was 250,000 marks available in Berlin. The seller of the wireless transfer undertook to make the marks immediately available to the plaintiff in Berlin by a wireless transfer of credit, to be effected by an order on their Berlin correspondent. Yet the defendants' position as stated in the brief of counsel, " is, that plaintiff bought 250,000 marks from them, and that plaintiff is now the owner of those marks. That it can ask defendants at its office for either a check in marks on Berlin, together with the interest, or it can ask to have the marks transmitted, if possible, to Berlin, Germany, with the interest, by wireless; but that in no event is plaintiff entitled to receive its American money back with which it purchased the exchange." But defendants' witness Strauss testified that, if the plaintiff had come to the defendants within a week after the transaction and had asked for a bag of 250,000 marks, the defendants " couldn't have given them to him because they did not buy the cash; they bought a wireless transfer, which is not cash;" that what they would

First Department, May, 1918.    [Vol. 182.

have received would have been a check on the Deutsche Bank payable in Berlin. De Wald, head of defendants' exchange department, testified that the defendants had no marks on deposit on April 2, 1917, or at any other time, and could not have delivered same on demand but would have given a check on Berlin. Of course a check on Berlin would have been of no value to the plaintiff after the declaration of war, and could not in any event have served for a speedy transfer of credit, which was what the plaintiff was buying. The exchange that the plaintiff purchased in this case was manifestly to be made effective by wireless transfer, and, concededly, it was not so transferred. It serves no purpose, under such circumstances, to argue that a purchaser of foreign exchange purchases foreign money. This was a purchase of a wireless transfer of credit for 250,000 marks, which credit was by wireless to be made available for plaintiff's immediate use in Berlin, and on defendants' failure to perform, owing to performance having been rendered impossible by reason of the war conditions, plaintiff would be entitled to the return of its money. But even if, as contended by defendants' counsel, the plaintiff be deemed to have purchased 250,000 marks and to be the lawful owner of them, defendants had no marks to deliver and could not have carried out the contract according to their own interpretation of it. If there was any purchase of marks, it was a purchase of marks deliverable in Berlin, but we think, as above stated, that the original contract plainly called for a wireless transfer of credit available to the plaintiff in Berlin, which the defendants were unable to perform.

The judgment and order should be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., LAUGHLIN, DOWLING and PAGE, JJ., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.