CECHANOWICZ *v.* HIGHLAND PARK STATE BANK.

1. BANKS AND BANKING—CONTRACT TO DEPOSIT MONEY IN FOREIGN COUNTRY—BREACH OF CONTRACT.

In an action for money paid by plaintiff to defendant bank to be deposited in a bank in a foreign country, where defendant agreed with plaintiff to purchase for him Russian rubles, deposit them for him in a Russian bank and re-

turn to him within two months a passbook showing such deposit or return to him his money, failure to return the book evidencing the deposit, *held*, a breach of the entire contract entitling plaintiff to the return of his money, rather than a partial breach for failure to return the passbook, entitling him to nominal damages only.

2. SAME—EVIDENCE—BREACH OF CONTRACT.
   Evidence *held*, to justify the finding of the jury that the remittance did not reach its destination.

3. SAME—PRINCIPAL AND AGENT—AGENT'S AUTHORITY.
   Evidence *held*, sufficient to take to the jury both the question of the holding out of the teller by the bank and his actual authority to bind it in said transaction.

4. SAME—TRANSMITTING MONEY TO FOREIGN COUNTRY—WAR—PUBLIC POLICY.
   This country not being at war with Russia, the fact that it was at war with other nations did not excuse defendant from the performance of its contract.

Error to Wayne; Webster (Arthur), J. Submitted June 12, 1923. (Docket No. 133.) Decided July 19, 1923. Rehearing denied October 1, 1923.

Assumpsit by Konstantin Cechanowicz against the Highland Park State Bank for money paid to defendant to be deposited for plaintiff in a foreign bank. Judgment for plaintiff *non obstante veredicto* for nominal damages only. He brings error. Reversed and remanded.

*Harry J. Lippman* (*Ralph W. Liddy*, of counsel), for appellant.

*Anderson, Wilcox, Lacy & Lawson* (*C. J. Huddleston*, of counsel), for appellee.

FELLOWS, J. It is the claim of the plaintiff, a native of Russia but a naturalized American citizen, a customer of defendant, that he was approached by Mr. Gruenberg, a teller of defendant working in the

foreign exchange department, with the suggestion that money could be made by the purchase of Russian rubles and depositing them in a Russian bank. This was in October, 1917, and rubles were worth 16 cents, having then fallen from 52 cents to that figure. Plaintiff was somewhat dubious about the situation in Russia but claims that Mr. Gruenberg assured him that the money could be sent and that the book showing the deposit would be returned in two months. He claims that Mr. Gruenberg agreed that the book would be delivered to him in two months or his money would be refunded. Plaintiff then paid $480, equivalent to 3,000 rubles, and the testimony shows that defendant issued the check or draft of the American Express Company which, accompanied by a letter directing the deposit of the amount in the State Savings Bank of Moscow (also called in the record the Imperial Bank of Russia) in the name of plaintiff, was sent to the Russo-Asiatoque Bank of Moscow. Chaotic conditions in Russia prevent either party from going further in their direct proof. The book showing the deposit of the money in the Imperial Bank of Russia was never received by defendant, and after waiting four years plaintiff brought this action. The case was submitted to the jury under the Empson act (3 Comp. Laws 1915, § 14568 *et seq.*). A verdict for plaintiff resulted. Later judgment for plaintiff for nominal damages only was entered notwithstanding the verdict and plaintiff brings the case here.

The trial judge, we think, took too narrow a view of the testimony when we view it in the light of all that took place and the surrounding circumstances as established upon the trial. His reasons for entering judgment *non obstante* were that the breach of the contract established was the failure to deliver the book; that the agreement between the parties contemplated that defendant should pay $480 for failure to

deliver the book; that this was in the nature of a penalty, not stipulated damages, and for these reasons plaintiff was entitled to recover only a nominal sum. While the plaintiff testified that Mr. Gruenberg agreed that the book would be delivered within two months and agreed that the bank would refund the money unless so delivered, it is obvious that the book could not and would not be delivered until and unless the defendant deposited in the Imperial Bank of Russia the 3,000 rubles. This Mr. Gruenberg agreed for the bank should be done. The agreement between the parties being that the money should be transmitted to and deposited in the Russian bank and the evidence of the completion of the contract be furnished defendant in the form of a passbook within two months. For this service a consideration was paid by plaintiff and we do not think it can be said that the consideration was paid for a part only of the services and the balance of them were a gratuity. It was all one transaction and we think the jury would be justified under all the circumstances in finding that the money was to be returned if the contract was not carried out by defendant and not for the breach of a minor portion of it. The trial judge instructed the jury:

"The first question for you will be: Did the plaintiff and the teller or the clerk of the defendant bank make an agreement by which the plaintiff paid $480, and in return the bank undertook to transmit the equivalent in rubles to the State Bank of Moscow, and obtain for the plaintiff a passbook from the Moscow bank within two months or failing in this, return to him the money he paid. Unless you find by a preponderance of the evidence that such an agreement was made, then your verdict will be for the defendant."

The jury under this instruction found for the plaintiff. We think the testimony, the legitimate inferences to be drawn from it and the surrounding cir-

cumstances, justified the jury in concluding that the repayment was to be made in case of a breach of the entire contract.

But it is insisted that there was no evidence that the money was not deposited in the Russian bank. It is true that there is no direct proof on that subject and defendant by the testimony of New York bankers taken by deposition has quite conclusively established that it is impossible to obtain such proof.   These witnesses, two of whom were in Russia in the fall of 1917, give most vivid descriptions of conditions during the revolution which commenced November 7th, a few days after the transaction here involved.   They testify to the inability to get mail from this country; to the taking over of the banks by the Reds, to utter chaos existing there.   We quote from the testimony of one of them:

"While in Russia I had occasion to communicate with the United States by mail or cable.   We were successful in getting mail out of Russia during 1917, but our receipt of mail was very irregular.   There were periods of three or four months at a time when letters which we had good reason to believe had been written and sent, were never received; oftentimes letters of one date were received one or two months after letters had been mailed at a later date.   This irregularity of mail service was common in Russia during 1917."

We think this testimony and much other of like purport, coupled with the fact that no passbook reached this country for four years and no answer was received in reply to defendant's letter of transmittal, justified the jury in finding that the remittance did not reach its destination.

It is next urged that the teller did not have authority to bind the bank.   That question was also submitted to the jury.   We think there was evidence taking to the jury both the question of holding out

(*Smith* v. *Hubbard*, 205 Mich. 44; *Plankinton Packing Co.* v. *Berry*, 199 Mich. 212; *First National Bank of Ann Arbor* v. *Holmes*, 213 Mich. 41), and of actual authority.    Mr. Wysocki, one of defendant's tellers, testified:

"*Q.* And it is a fact, is it not, that in dealing with customers you as clerk of the foreign exchange department would inform the customers that if the money that they delivered to the bank for the purpose of delivering money to persons in Russia was not delivered that refunds would be made to them?

"*A.* Yes, sir.

"*Q.* And in keeping with that statement, if the money was not delivered, there would be a refund made according to the understanding?

"*A.* In some cases."

And Mr. Deutsch, manager of defendant's foreign exchange department, testified:

"*Q.* In the Highland Park State Bank in the month of October, 1917, did the teller have authority to begin and complete the entire negotiations with reference to forwarding, transmitting, or delivering foreign exchange?

"*A.* He had a right to complete the deal, yes.

"*Q.* The only person that a customer sees or deals with when he goes to the bank to forward exchange to another country is the teller, that is true, isn't it?

"*A.* Yes, sir."

This country was not at war with Russia, so that the question of dealing with an enemy, of public policy, is not involved.    The fact that this country was at war with other nations did not excuse the defendant from the performance of its contract.    *United States* v. *Powers,* 274 Fed. 131; *Coal District Power Co.* v. *Katy Coal Co.,* 141 Ark. 337 (217 S. W. 449); *Sokoloff* v. *National City Bank,* 196 N. Y. Supp. 364.

Much space is taken in the briefs with a discussion of the law dealing with foreign exchange, when the trust relation is created, when not, and kindred sub-

jects.    But we think in the final analysis the case presents only questions of a simple contract.    If defendant for a consideration sold plaintiff foreign exchange and agreed to transmit it and deposit it in the Imperial Bank of Russia in plaintiff's name and deliver to him a passbook within two months evidencing the performance of the contract, and further agreed to return his money if it did not perform its contract and it failed to perform its contract, it is liable.    There is evidence taking the case to the jury and the jury has found with the plaintiff on the facts.    Under substantially the same facts as here involved liability has been sustained.    *Slivick* v. *American Express Co.,* 176 Wis. 314 (186 N. W. 185) ; *Stern* v. *Barrett,* 195 N. Y. Supp. 160; *Temmer* v. *Zimmermann, id.* 412; *Dermer* v. *Barrett, id.* 703; *Atlantic Communication Co.* v. *Zimmermann,* 182 App. Div. 862 (170 N. Y. Supp. 275) ; *Pfotenhauer* v. *Equitable Trust Co.,* 188 N. Y. Supp. 464.

The judgment will be reversed and the case remanded with instructions to enter judgment on the verdict.    Plaintiff will have costs.

WIEST, C. J., and MCDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.