AMERICAN UNION BANK, Appellant, *v.* OSCAR L. GUBELMAN and Others, Individually and as Copartners Engaged in Business under the Firm Name and Style of " KNAUTH, NACHOD & KUHNE," Respondents.

First Department, April 3, 1925.

Banks and banking — action to recover part of money paid to defendants to establish foreign credit of 700,000 marks — defendants attempted to establish credit by two cables and confirmatory letters — credit of 400,000 marks was established — defendant's act in sending one cable for 400,000 marks and one for 300,000 marks was severance of contract — severance was acquiesced in by plaintiff — plaintiff rescinded contract as to 300,000 marks on failure of defendant to establish that credit — plaintiff had right to rescind and may recover back proportional amount on theory of money had and received.

In an action to recover a part of money paid by the plaintiff to the defendants for the transfer of 700,000 marks in a German bank to the credit of an Austrian bank, plaintiff's correspondent, the action of the defendants in sending one cable and confirmatory letter covering 400,000 marks and another cable and letter covering 300,000 marks, which action was acquiesced in by the plaintiff, amounted to a severance of the contract, and the plaintiff had the right to rescind the contract as to the 300,000 marks, credit for which was not established, and to recover back a proportional amount of the money paid to the defendants on the theory of money had and received, for, as to that part, there was a complete failure of performance, which is exactly calculable in respect to the consideration paid.

A letter written by the plaintiff to the defendants more than three years after the contract was made and after the first transfer was effected, which stated that it could not permit or accept delivery of the credit, and that it formally rescinded the transaction and demanded payment back of a proportional amount, constituted a notice of rescission.

APPEAL by the plaintiff, American Union Bank, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 8th day of June, 1923, upon the dismissal of the complaint by direction of the court at the close of the plaintiff's case.·

*Lewis & Kelsey* [*Charles C. Pearce* of counsel; *Wallace T. Stock* with him on the brief], for the appellant.

*Rosenberg & Ball* [*Charles S. Ascher* of counsel], for the respondents.

MARTIN, J.:

This action was brought to recover $51,562.50, with interest from March 15, 1917, being part of the sum of $120,312.50 paid by the plaintiff to the defendants on a transaction in foreign exchange between the parties whereby, in consideration of such payment of

$120,312.50, the defendants undertook to establish by wireless a credit in the Deutsche Bank, Berlin, Germany, of 700,000 marks, to the credit of the Bohemian Union Bank, Prague, Austria, plaintiff's correspondent. The transaction occurred on or about March 15, 1917.

The defendants, unknown to the plaintiff, undertook to make the transfer by two separate transactions. They sent one wireless message to their correspondent covering 400,000 marks, and a mail confirmation thereof, and another wireless message, with mail confirmation, to their correspondent regarding the 300,000 marks.

They effectuated the transfer as to the 400,000 marks in the Deutsche Bank to the credit of the designated beneficiary on June 21, 1917, not by wireless, because the wireless message was never received by defendants' correspondent, but pursuant to the confirmation by mail. The defendants wholly failed to accomplish the transfer of the 300,000 marks. With reference to this latter sum of marks, as in the other instance, the wireless message was not received by the defendants' correspondent. However, the confirmation by mail was received by their correspondent on May 2, 1917, over a month and a half prior to the receipt of the confirmation of the transfer of the 400,000 marks.

The Bohemian Union Bank, plaintiff's correspondent, utilized the credit of 400,000 marks subsequent to the date of its effectuation on June 21, 1917. The declaration of war upon Germany on April 6, 1917, prevented the plaintiff from communicating either with the Deutsche Bank or the Bohemian Union Bank, and it was not until communications were resumed in the fall of 1920 that the plaintiff was enabled to discover what had happened in the interim.

Plaintiff contends that defendants' method of performance had the practical effect of severing the transaction originally contemplated by the parties into two transactions, as if there had been two contracts; that having acquiesced in the situation, created by defendants, on learning the facts, plaintiff thereby ratified such severance; and that plaintiff rescinded the 300,000 marks transaction by reason of defendants' failure to perform and by reason of failure of consideration in this respect.

The court dismissed the complaint at the conclusion of the plaintiff's case upon the ground that the contract was entire and could not be rescinded as to one transaction and ratified as to the other.

Appellant contends that the technical contentions made by defendants are superficial and sham; that, even though it be assumed that the contract was in form originally entire, in case of failure of consideration in part, if it be a precise and definite part ascertain-

able by computation, a corresponding part of the money paid may be recovered; that the contract was interpreted and acted upon by the parties as severable and was effectually severed; that the practical construction put upon a contract by the parties to it is generally conclusive as to its meaning and interpretation, and that the precedents in these foreign exchange cases are favorable to a recovery in this form of action.

The complaint alleges in general language an agreement by the defendants to make available a credit at the Deutsche Bank, Berlin, " in the amount of seven hundred thousand (700,000) marks Germany currency." A bankers' custom as to time of performance is alleged as well as payment of the American dollar equivalent to the defendants, and that they did not, within the time stated to be customary, " nor within a reasonable time thereafter, make available at the Deutsche Bank, Berlin, \* \* \* a credit \* \* \* in the sum of Seven hundred thousand (700,000) marks, or any part thereof, except a credit in the sum of Four hundred thousand (400,000) marks; nor has the defendant ever made so available a credit of the balance of Three hundred thousand (300,000) marks, or any part thereof \* \* \*."

The contract recites the " sale " of a wireless transfer, to be made to the Deutsche Bank, Berlin, " Foreign Amount M. 700,000 at 68¾, $120,312.50." There is printed at the bottom the following clause: " Knauth, Nachod & Kuhne and their correspondents are not responsible for errors, interruptions or delays of any kind in the cable service."

Conspicuously set forth upon the printed form of contract was the following rubber-stamped clause, the importance of which was emphasized by its position and the manner in which it was placed: " Owing to censorship and other conditions of war causing delays beyond our control, it is agreed that this firm declines all responsibility as regards delays and sends all cable orders or repetitions thereof at the clients cost and risk."

In interpreting this contract we are aided by several decisions in our courts in which similar contracts have been considered.

In *Legniti* v. *Mechanics & Metals Nat. Bank* (230 N. Y. 415, 420, 421) Judge Crane, writing the opinion, said: " The terms of the contract are in such a case that the banker agrees to send a cablegram establishing a credit with his foreign correspondent. The contract, it is said, is executory until the credit has been established and that upon failure to send the message the customer may rescind the contract and sue to get back his money or else sue for breach of contract. \* \* \*. In either case, the money paid by the customer to the banker becomes the latter's property and

does not establish a trust relationship; the banker does not hold the money as agent or trustee until the foreign credit is established.

" There is a marked distinction between these transactions which I have just described and a direction to a bank or other person to transmit a certain specific sum of money to a person abroad. In such cases the bank or transmitter is the agent of the person paying the money, and until the money is sent holds it as agent or trustee for the owner." (See, also, *Gravenhorst* v. *Zimmerman*, 236 N. Y. 22.)

In *Chemical National Bank* v. *Equitable Trust Co.* (201 App. Div. 485) this court said: " That the purchase of a cable transfer under the facts submitted constitutes an executory contract would seem to be established by the case of *Equitable Trust Co.* v. *Keene* (232 N. Y. 290). * * *. The entire failure of the defendant to perform this executory contract authorized the rescission by the plaintiff of its contract and a recovery in an action for moneys had and received to the extent of the deposit made. In the case of *Scheibe* v. *Zaro* (199 App. Div. 807) this court denied the right of rescission of an executory contract to transmit moneys to a savings bank on the ground that the parties could not be put in *statu quo*. * * *.

" Even if the facts stipulated showed a deposit with the Deutsche Bank of marks sufficient in value to meet the transfer agreed to be created, this clause worded by the defendant itself would not be sufficient to exempt the defendant from liability for repayment of moneys had and received upon rescission of the contract which has never been performed. Without proof, however, of a sufficient deposit with the Deutsche Bank of such an equivalent amount in marks, and without proof of damage to the defendant in retaining the deposit for the payment of this draft, no facts appear which would make it impossible to restore the *status quo* of the parties in case of rescission, nor would such facts prevent the defendant from rescinding this contract which has been in no part performed. This is an agreement to transmit credit, not to remit moneys, and comes within the distinction clearly pointed out in the case of *Katcher* v. *American Express Company* (94 N. J. L. 165; 109 Atl. Rep. 741). The plaintiff, immediately upon notification, demanded the return of the deposit, to which it was in my judgment clearly entitled within the holdings of the courts of this State. (*Atlantic Communication Co.* v. *Zimmermann*, 182 App. Div. 862; *Goepel* v. *Zimmermann*, decided without opinion, 199 id. 915; *Safian* v. *Irving Nat'l. Bank*, 116 Misc. Rep. 647.)"

A letter from plaintiff dated December 3, 1920, is asserted to have been an unequivocal notification to defendants that the plaintiff

rescinded the 300,000 marks transaction. A portion of that letter is as follows: "We cannot now permit or accept delivery of this credit. Since we have received no consideration for the United States money paid you on or about March .15th, 1917, for this 300,000 Mark credit, we hereby formally rescind this transaction and request that you let us have at once a check for the sum of $51,562.50, being the proportionate amount paid you for the 300,000 Marks, with interest thereon from the date of payment to you."

Similar letters have been held sufficient notice of rescission. (See *Gravenhorst* v. *Zimmerman*, 236 N. Y. 22; *Goepel* v. *Zimmermann*, 205 App. Div. 842; *Safian* v. *Irving National Bank*, 236 N. Y. 513.)

In *Mansfield* v. *Trigg* (113 Mass. 350) the court, writing with reference to the severability of a contract, said: "The entirety may be broken by the concurrent act of both parties, so that a partial rescission may be effected. Thus when a part only of the goods have been delivered, upon a contract like the present, and one party refuses to complete it by delivering or accepting the remainder, the other party may then elect to treat such refusal as a repudiation or rescission of the unfulfilled part of the contract. If the seller refuse to deliver, the purchaser may recover back any excess of purchase money that has been paid by him, beyond the price of what has been delivered. *Hill* v. *Rewee*, 11 Met. 268. But if the breach of contract on the part of the seller is only in the quality, the other party cannot convert that into a rescission, but must, if he intends to rescind at all, rescind *in toto*. *Clark* v. *Baker*, 5 Met. 452. These two cases illustrate the distinction, and the principle on which it rests."

In *Portfolio* v. *Rubin* (233 N. Y. 439, 444) the Court of Appeals said: "Much is made in the opinions below regarding the divisibility of this contract. The parties found it capable of division and agreed according to the terms of the contract upon the purchase price of the two pieces accepted. In *Ming* v. *Corbin* (142 N. Y. 334, 340) this court said: 'A contract is entire when the parties intend that the promise by one party is conditional upon entire performance of his part of the contract by the other party. The contract is said to be severable when the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item or is left to be implied by law. (2 Parsons on Cont.*; *Tipton* v. *Feitner*, 20 N. Y. 423; *Pierson* v. *Crooks*, 115 id. 554.)

" ' Whether a contract is entire or to be taken distributively is often a question of intention and frequently one of fact.'

* See 2 Pars. Cont. (5th ed.) 517 *et seq.*— [REP.

" To the same effect *Clark* v. *West* (137 App. Div. 23; affd., 201 N. Y. 569) and *Pierson* v. *Crooks* (115 N. Y. 539, 555)."

In *Joannes Bros. Co.* v. *Lamborn* (199 App. Div. 588, 591) this court said: " The contract between defendants and the Childs Company was entire and not a divisible contract. ' The entirety of the contract is not destroyed by the circumstance that the subject of the sale is of such uniform character as to be readily divisible proportionately, by weight or measure, or is contained in packages of uniform quantity and value, even with the added circumstance that the consideration is named only by way of fixing the rate or price of the unit of such division. * * * If the seller refuses to deliver, the purchaser may recover back any excess of purchase money that has been paid by him, beyond the price of what has been delivered * * *. But if the breach of the contract on the part of the seller is only in the quality, the other party cannot convert that into a rescission, but must, if he intends to rescind at all, rescind *in toto*.' (*Mansfield* v. *Trigg*, 113 Mass. 350, 353.) This is a very good statement of the common law which obtains in this jurisdiction."

In *Hill* v. *Rewee* (52 Mass. [11 Metc.] 268) the court said: " If, therefore, the defendant had failed wholly in the performance of his contract to deliver the hay, the plaintiff might disaffirm the contract, and recover back the money advanced, as money paid on a consideration which had failed, and held by the defendant to the plaintiff's use. And in modern times, it has been held, that where the contract fails in part, if it be a precise and definite part, capable of being ascertained by computation, a corresponding part of the purchase money may be recovered back, although the bargain or contract is in form entire. *Johnson* v. *Johnson*, 3 Bos. & Pul. 162; *Parish* v. *Stone*, 14 Pick. 198; *Miner* v. *Bradley*, 22 Pick. 457.

" The contract being for the delivery of a quantity of hay at a fixed price, and all of one quality, the price per ton fixed the price per pound. ' If then a part of the hay was delivered, according to the contract, but a precise and definite part remained undelivered, and the defendant, without justification or excuse, refused to deliver the other part on demand, the court were of opinion, that a corresponding portion of the money advanced, capable of being ascertained by computation, might be recovered back."

In *Dermott, etc., Co.* v. *Zelnicker S. Co.* (271 Fed. 918, C. C. A. 8th Circuit, 1921) the court said: " Appellee commenced this action at law to recover money which it had paid to appellant in advance as a part of the consideration of a contract executed by it and appellant August 10, 1918, and modified by a supplemental contract dated February 19, 1919, which contract appellee

had rescinded for the failure of appellant, after partial performance, to perform in full. After issue joined, it appearing that an accounting would be necessary, the cause was by consent transferred to the equity docket and thereafter proceeded with as a cause in equity. On final hearing a decree was entered in favor of appellee for $20,513.23, being the amount sued for, with interest. Appellant claims that the trial court erred in not allowing a credit to it in the sum of $4,124.96, and in the allowance of interest. * * *.

" The rule that the party who seeks to rescind a contract shall return whatever he has received thereunder, like other rules of justice, must be so applied in the practical administration of justice as shall best subserve in each particular case the undoing of wrong and the vindication of right. *Roberts* v. *James*, 83 N. J. Law, 492, 85 Atl. 244, Ann. Cas. 1914B, 859. Some of the earlier cases enforced the rule with much strictness, but the trend of the later cases is in favor of a more reasonable and equitable application of the rule. *Corse* v. *Minnesota Grain Co.*, 94 Minn. 331, 102 N. W. 728; *Sisson* v. *Hill*, 18 R. I. 212, 26 Atl. 196, 21 L. R. A. 206; *Bostwick* v. *Mutual Life Ins. Co.*, 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, 67 L. R. A. 705; *Bell* v. *Anderson*, 74 Wis. 638, 43 N. W. 666; *Potter* v. *Taggart*, 54 Wis. 395, 11 N. W. 678."

Defendants' interpretation of the contract, acquiesced in and ratified by plaintiff, demonstrates that the part as to which there has been a complete failure of performance, is exactly calculable, in respect to the consideration paid. Being precisely so calculable as a matter of exact mathematics, without any possibility of doubt or error, plaintiff is entitled to recover as to such part for failure of consideration on the equitable principle of an action for money had and received. The plaintiff is right in asserting that defendants' position is essentially superficial; for fundamentally there is no occasion to balance part failure of performance against part performance. There is exact mathematical division and the principle relied on by defendants is inapplicable. The theory of recovery of consideration for failure to perform, and the principles of justice on which it rests and is applied, are among those long recognized and established in the common law. There was never any occasion in this case for concern over theories involving the idea of divisibility of a contract obligation or of that of rescission.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

DOWLING, MERRELL, FINCH and McAVOY, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide the event.